## SWIFT v. PARMENTER et al.

## MOORE v. WORK, SECRETARY OF THE INTERIOR, et al.

Circuit Court of Appeals, Eighth Circuit.
October 15, 1927.

Nos. 340, 341.

1. **Insane persons** �köæ69—**Circuit Court of Appeals, as court of equity, will protect estates of incompetents whose interests are not being safeguarded.**

Circuit Court of Appeals is court of equity, and its plain and unavoidable duty is to protect estates of incompetents, when their interests are not being safeguarded in litigation before it.

2. **Equity** ⊝⊃446—**Error of law apparent on face of record and discovery of new matter are grounds recognized in equity as bases for bills of review.**

The two grounds recognized in equity as bases for bills of review are error of law apparent on face of decree and new, relevant, and material proof, discovered since entry of decree, which might produce different determination than the one adjudged.

3. **Equity** ⊝⊃446—**That Circuit Court of Appeals passed on question whether moneys due incompetent Indian were restricted funds was not error on face of decree, justifying bill of review.**

Bill of review will not be granted to open decree on ground of error of law apparent on face of decree, because Circuit Court of Appeals passed on question whether moneys to be paid incompetent Indian were restricted funds, on submission of such question by all parties having interest therein.

4. **Equity** ⊝⊃447(2)—**Bill of review for discovery of new matter will not be allowed, though guardian of incompetent, not recognized in litigation, was subsequently declared lawful guardian.**

Bill of review to open decree on ground of discovery of new matter will not be allowed, because of subsequent recognition of guardian of incompetent, who was party to litigation, though Circuit Court of Appeals refused to recognize him at time of decree, in view of writ of prohibition issued by state court, under which he was without official status.

5. **Equity** ⊝⊃446—**Bill of review for error of law on face of record presents only questions arising on pleadings, proceedings, and decree.**

Only questions open for examination on bill of review for error of law appearing on face of record are such as arise on pleadings, proceedings, and decree, without reference to evidence in cause.

**6. Equity ⬤⟶450—One not party nor privy to party in cause cannot maintain bill of review to open decree therein.**

One who was not party to certain cause, nor privy to any party therein, cannot maintain bill of review to open decree in such cause.

**7. Equity ⬤⟶455—Allowance of bill of review for newly discovered evidence is discretionary.**

It lies within discretion of a court whether it will allow bill of review for newly discovered evidence.

**8. Equity ⬤⟶451—Petition for leave to file bill of review should ask leave to file in District Court.**

Petition for leave to file bill of review should be presented for leave to file in District Court, rather than for leave to file in Circuit Court of Appeals.

Application for Leave to File Bill of Review.

Applications by George M. Swift, opposed by R. W. Parmenter and others, and by Hill Moore, successor to W. E. McKinney, as guardian of Martha Jackson, an incompetent, opposed by Hubert Work, Secretary of the Interior, and another, for leave to file bills of review to open and modify a decree entered in the cause of United States v. Bessie Wildcat and others. Applications denied.

See, also, 280 F. 486.

Chester I. Long, of Wichita, Kan. (Peter Q. Nyce, of Washington, D. C., Austin M. Cowan, of Wichita, Kan., J. B. Campbell, of Holdenville, Okl., J. D. Houston and W. E. Stanley, both of Wichita, Kan., George E. Chamberlain, of Washington, D. C., and W. W. Pryor, of Holdenville, Okl., on the brief), for petitioner Swift.

Sid White, of Okemah, Okl. (R. S. Cate, of Muskogee, Okl., on the brief), for petitioner Moore.

O. H. Graves, Asst. Sol. Interior Department, of Washington, D. C. (E. O. Patterson, Sol. Interior Department, of Washington, D. C., on the brief), for respondent Work.

Webster Ballinger, of Washington, D. C., for respondent Davis.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. Each of the petitioners, George M. Swift and Hill Moore, asks leave to file a bill of review, for the purpose of opening and modifying a decree entered in Cause No. 2017, entitled United States of America v. Bessie Wildcat et al., heretofore pending in the United States District Court for the Eastern District of Oklahoma, which decree was entered on June 17, 1919, and thereafter modified on September 27, 1922, pursuant to mandate of this court. That suit was brought against Bessie Wildcat, Martha Jackson, other named full blood Creek Indians, Black Panther Oil & Gas Company, and others, to cancel an allotment made to Barney Thlocco, a full blood Creek Indian, out of Creek tribal lands. Early in the progress of that case it was held that the ground on which the United States sought to impeach the validity of the allotment was not maintainable (United States v. Wildcat, 244 U. S. 111, 37 S. Ct. 561, 61 L. Ed. 1024); and thereafter the issues that remained in the case, Thlocco having died, were between 200 or more intervening Creek Indians who claimed to be his heirs, as well as Martha Jackson and other original defendants who set up heirship. The allotted quarter section of land proved to be of great value in oil deposits, and this was doubtless the incentive that brought on so many interventions. In behalf of Martha it was asserted that Barney Thlocco and all of his children, except Martha's mother, had died in an epidemic of smallpox, that afterward her mother married Saber Jackson, that Martha was the only issue of that marriage and her mother was deceased. Saber Jackson, the father of Martha, claimed a curtesy consummate. As the guardian of Martha he gave an oil lease to one Johnson, which by assignment passed to the Black Panther Oil & Gas Company. For the purpose of protecting those who might ultimately be found to be entitled to the royalties on the oil produced, the court in 1914, pending the litigation, appointed a receiver to hold 25 per cent. of the production or its value, and that fund had accumulated to more than $1,000,000 at the time of final decree. Saber Jackson had been removed as Martha's guardian and R. W. Parmenter appointed. He employed counsel to represent his ward's interest throughout the litigation, and they rendered the necessary services. On May 9, 1919, the day before Martha Jackson reached the age of 18, the county court of Seminole County, Oklahoma, which had appointed Parmenter her guardian while she was a minor, found that she was an incompetent adult, and on that day appointed Parmenter guardian of her person and property because of her incompetency. On the 19th day of May, 1919, the county court of Okfuskee County, Oklahoma, entered an order finding Martha Jackson an incompetent adult and appointed W. E. McKinney as her guardian, and that appointment is the real cause for both of these petitions.

On May 19, 1919, the day on which Mc-

Kinney was appointed guardian by the county court of Okfuskee County, he made a contract with petitioner Swift, by which he undertook to employ Swift as his attorney, and in consideration of the services to be performed by Swift McKinney agreed that Swift "shall have and receive one-half of all property or money which may be recovered by him in any suit or suits filed by him, whether received upon any settlement or compromise or upon judgment. In consideration of the fee hereby agreed to be paid, the said Swift hereby undertakes and agrees to diligently and carefully prosecute, or cause to be prosecuted, such suit or suits as may be necessary for the recovery of the above described property and royalties, and if said suit or suits are defeated, to claim no further compensation, but in the event said second party shall recover, or cause to be recovered, either upon settlement and compromise or judgment, any part of said property or royalties, he shall be entitled to and shall receive one-half of such recovery as full compensation; and the party of the first part hereby appoints and designates the said second party (Swift) his true, sole and lawful attorney in said matter with full power to settle, compromise and receipt for all money or property and hereby assigns, conveys and sets over to said second party an undivided one-half interest in all sums of money or property recovered by him, and that the services so. rendered shall be a first lien upon the subject of said controversy in favor of second party and associate counsel."

The contract further recited that Swift was employed as attorney at law to take all necessary and proper steps to avoid and cause to be cancelled and held for naught all deeds, assignments, contracts of settlement or instruments of any character which had been made by R. W. Parmenter, guardian of Martha Jackson, affecting her title to the quarter section and the royalties arising therefrom.

[1] Considering the circumstances under which this contract was made we have no doubt that a chancellor with due regard to the interest of the ward would have cancelled it as improvident and grossly unfair. Assuming that McKinney and Swift knew the real facts in connection with the litigation then pending, the steps that had been taken to establish Martha's interest, the cost of that litigation and the provisions made to safeguard her interest, we cannot regard the authority given Swift to bring suit or suits to recover Martha's interest otherwise than as a mere pretense. Contracts had theretofore been made under which Martha was assured of getting $123,000, plus one-eighth of 25 per cent. of the proceeds to be derived from the sale of oil and gas under the lease during a stated time. Pursuant to these contracts the Black Panther Company had spent more than $400,000 of its money in the litigation to establish Martha's claim to the land. True, in doing so it protected itself as her lessee and grantee; but that does not lessen the fact that she was the beneficiary; and most likely would have gotten nothing if that assistance had not been given. And so we say there could have been no reasonable expectation of instituting litigation to undo everything that had been done, as McKinney pretended he would do when he asked to intervene in the original cause. But that cause was near its close, a large sum was to shortly be paid over to Martha, and under the terms of the contract half of it would be Swift's money. It is sufficient to say, this is a court of equity and its plain and unavoidable duty is the protection of estates of incompetents when their interests are not being safeguarded in litigation here.

On June 17, 1919, the day on which the court rendered its decree in said Cause No. 2017, McKinney tendered to the court his petition of intervention as guardian of Martha Jackson. He recited therein much, if not all, that had been done in relation to Martha Jackson's claimed interest in the quarter section by her guardians, beginning with the lease made to Johnson by her father as her guardian, in June, 1913, charged that all of them were contrary to the interests of Martha, that some of them were fraudulent, asked that they be adjudged void and attacked the appointment of Parmenter as guardian of Martha on May 9, 1919, as having been illegally made and alleged that it was void. His intervention was opposed and the court denied him the right to intervene, for the reason that his claimed right to intervene was based on a collateral attack on the action of the county court of Seminole County in appointing Parmenter. He was then granted an appeal to this court. We affirmed the action of the district court in denying McKinney the right to intervene, in an opinion found in 280 F. 486, where a review of the steps taken in protection of the interests of the ward in the litigation may be found. We expressed our reasons for affirming the action of the district court, and they need not be repeated here. Pending that appeal a new situation arose by mutual agreement of all parties in interest, which

substantially affected the interests of Martha Jackson and which required a modification of the decree that had been rendered by the district court. By stipulation of the parties it was agreed that the decree should be so modified. By motion of the interested parties it was requested that this court make the modification or remand the case to the district court for that purpose. We took the latter course, and on our mandate the district court in obedience thereto modified the decree as thus requested.

The district court, in its decree of June 17, 1919, found that Martha Jackson was the owner of the quarter section, that none of the many intervening defendants had any interest therein, and that Martha was entitled to the amount of the impounded royalties agreed to by all the interested parties. The stipulation pending appeal increased or definitely fixed that sum at $308,000. The Secretary of the Interior approved that agreement on condition that it "be paid to the Superintendent for the Five Civilized Tribes for the use and benefit of Martha Jackson, to be held and controlled by said Superintendent as are other restricted individual Indian moneys." Our mandate embodied that provision and the decree as thus modified has been executed. The Secretary has since controlled and administered the fund as restricted Indian funds belonging to Martha Jackson. Petitioners claim that it was not a restricted fund, and that this court erred in treating it as restricted. The error, they say, is demonstrated by a decision of this court found in the case of United States v. Gypsy Oil Co. (C. C. A.) 10 F.(2d) 487, rendered December 18, 1925, almost four years after our decision and mandate. 280 F. 486. In behalf of Moore, who claims to be the present lawful guardian of Martha, it is argued that the modification should be made so as to give him custody of the fund. On behalf of Swift it is said he has a suit pending in the District of Columbia against the Secretary and Martha, in which he asks for an allowance to himself and associates for services which they claim to have rendered to McKinney as Martha's guardian, that the Secretary has answered in that suit that he holds the fund as a restricted fund by virtue of said decree in said original Cause No. 2017; and he wants the modification as an avoidance of the Secretary's claimed defense. The Secretary and Martha, who is now the wife of one Davis, appear here separately by counsel and oppose the granting of leave to file the proposed bills of review.

22 F.(2d)—10

We noted in our opinion (280 F. 486) that after McKinney appealed from the order denying the intervention, Parmenter, as the guardian of Martha Jackson, an incompetent, instituted original proceedings in the Supreme Court of Oklahoma against McKinney and the County Judge of Okfuskee County, in which he prayed that the writ of prohibition of that court might issue commanding that court and McKinney to desist and refrain from further proceedings in the matter of the guardianship of Martha Jackson, and that court, while McKinney's appeal was pending here, issued the writ prayed for. It held: (a) When the county court of Seminole County took jurisdiction (in appointing Parmenter), the same was coextensive with the state, and excluded the jurisdiction of the county court of every other county; (b) that the matter set up by McKinney attacking the validity of the order appointing Parmenter, constituted a collateral attack upon the action of the county court of Seminole County and was not permissible; and (c) that the county court of Okfuskee County was without jurisdiction to act in the premises. It now appears that at some time thereafter McKinney went into the county court of Seminole County and there made a direct attack upon the validity of Parmenter's appointment of May 9, 1919. The county court held that Parmenter's appointment was valid. The question was appealed to the district court of that county and the district court, on March 8, 1923, reversed the county court, directing that court to vacate the order appointing Parmenter. Parmenter appealed from this order to the Supreme Court, and on July 14, 1924, he dismissed his appeal. Five days later the county court of Okfuskee County appointed petitioner Hill Moore as the guardian of the person and estate of Martha Jackson Davis, an incompetent, she having married; but, strange to say, the writ of prohibition that had been issued against the county court of Okfuskee County and McKinney remained in force and effect until it was revoked by order of the Supreme Court on November 22, 1926. In doing so that court said: "That the judgment of the district court of Seminole County so made and entered on the 8th day of March, 1923, falsified the ground, in fact, upon which the writ herein was based, and said writ should be revoked, set aside and held for naught." Parmenter's dismissal of his appeal from the judgment of the district court of Seminole County left its judgment as the final, controlling adjudication on that issue.

[2-4] And now it is said in the petitions for leave to file bills of review, that both grounds recognized in equity as bases for such bills exist in support of the attack which Swift and Moore make on the final decree in the district court in Cause No. 2017; first, there is an error of law apparent upon the face of that decree, and secondly, new, relevant and material proof has come to light since the entry of that decree which, had it been known might probably have produced a different determination than the one adjudged. Story's Equity Pleadings (10th Ed.) § 404. The first is leveled at that part of the decree consisting of the modification made at the direction of this court to pay the $308,000 to the Superintendent of the Five Civilized Tribes as a restricted fund for the use and benefit of Martha Jackson; it being claimed in that regard that the fund was not a restricted fund. As to the second ground, it is said that the final adjudication of the Oklahoma State courts that Okfuskee County had jurisdiction over Martha Jackson, an incompetent, and the appointment of McKinney as her guardian, constitutes newly discovered evidence sufficient to justify opening and modifying the final decree and thus recognizing McKinney, contrary to the order which we affirmed, denying him the right to intervene in the original cause.

There can be no doubt, we think, of the jurisdiction of this court in McKinney's appeal to pass on the question whether the moneys to be paid out of the royalties to Martha Jackson, a full-blood Creek Indian, incompetent to look after her own interests, were restricted funds, on the submission to us of that question by all parties having an interest therein; nor of our right and duty on the facts as they existed at that time to recognize Parmenter, rather than McKinney, as the representative of Martha, for all purposes of the suit in which the appeal was taken. McKinney had a future contingent right to compensation as guardian in event the funds ever came to his hands for safe keeping and administration. He had no personal interest in them and no official right to receive them. Under the writ of prohibition issued by the Oklahoma Supreme Court he was without official status, and we declined to recognize him in that capacity, as did the district court.

In view of what has been said it seems that under the settled rule neither ground relied on for the proposed bills of review is sufficient to sustain them. The decision in the Gypsy Case and the decisions of the Okla-homa courts finally sustaining the jurisdiction of Okfuskee County in appointing McKinney as guardian were rendered long after the decree and its modification were entered, and that decree as modified has been executed. Those decisions do not constitute either ground of the proposed bills: Error of law apparent upon the face of the record, and discovery of new matter. In Scotten v. Littlefield, 235 U. S. 407, 411, 35 S. Ct. 125, 59 L. Ed. 289, it is said:

"Bills of review are on two grounds: First, error of law apparent on the face of the record without further examination of matters of fact; second, new facts discovered since the decree, which should materially affect the decree and probably induce a different result. 2 Bates' Federal Equity Procedure, 762; Street's Federal Equity Practice, vol. 2, § 2151. If the decision in the Gorman Case would have required a different result if the principles upon which it was decided had been applied in the original proceeding, which we do not find it necessary to decide, such subsequent decision will not lay the foundation for a bill of review for errors of law apparent, or for new matter in pais discovered since the decree and probably requiring a different result."

Again, in Simmons Co. v. Grier Bros., 258 U. S. 82, 88, 42 S. Ct. 196, 198 (66 L. Ed. 475) the court speaks of this rule thus:

"The cases cited are to the effect that, in the application of the ancient rule of practice in equity, based upon Lord Bacon's first ordinance (Story Eq. Pl. [6th Ed.] § 404), a change in the authoritative rule of law, resulting from a decision by this court announced subsequent to the former decree, neither demonstrates an 'error of law apparent' upon the face of that decree nor constitutes new matter in pais justifying a review."

[5] Nor can a bill of review on the first ground be added to or in any manner strengthened by the facts in the challenged case. It must rest on the record of that case and find its support in the pleadings, proceedings of the court and decree. In Shelton v. Van Kleeck, 106 U. S. 532, 534, 1 S. Ct. 491, 27 L. Ed. 269, it is said:

"The only questions open for examination on a bill of review for error of law appearing on the face of the record are such as arise on the pleadings, proceedings, and decree, without reference to the evidence in the cause. This has been many times decided in this court." Kimberly v. Arms (C. C.) 40 F. 548, 555; Story's Eq. Pl. (10th Ed.) § 407.

[6, 7] Furthermore as to Swift, he was not a party to Cause No. 2017, nor privy to any party therein, and for that reason alone he cannot maintain such a bill. Story, § 409. Again, as to Swift, it lies within the discretion of a court whether it will allow a bill for newly discovered evidence. Thomas v. Brockenbrough, 10 Wheat. 146, 6 L. Ed. 287. Story, supra, says on this branch of the subject (section 417):

"In the next place, there is another important qualification, which is indeed deducible from the very language of Lord Bacon's ordinance; and that is, that the granting of such a bill of review for a new-discovered evidence, is not a matter of right, but rests in the sound discretion of the court. It may, therefore, be refused, although the facts, if admitted, would change the decree, where the court, looking to all the circumstances, shall deem it productive of mischief to innocent parties, or for any other cause unadvisable."

[8] While the petitions ask leave to file the bills here and for the issuance of our subpœna thereon, we have nevertheless treated the applications on their merit. They should have been presented for leave to file in the district court. Pittsburgh, C., C. & St. L. Ry. Co. v. Keokuk & H. Bridge Co. (C. C. A.) 107 F. 781.

We think there are no sufficient grounds stated in either application, and leave to file is therefore denied both petitioners.