GEORGE M. HODGSON, PLAINTIFF-APPELLANT, v. LEROY APPLEGATE AND CLARA E. APPLEGATE, DEFENDANTS-RESPONDENTS.

Argued September 14, 1959—Decided October 26, 1959.

*Mr. Martin L. Haines* argued the cause for the plaintiff-appellant (*Mr. Howard G. Stackhouse,* attorney; *Messrs. Dimon, Haines & Bunting* of counsel; *Mr. Dominick J. Ferrelli* of counsel and on the brief).

*Mr. Walter P. A. Ensor, Jr.,* argued the cause for the defendants-respondents (*Mr. Joseph M. Alsofrom,* attorney and of counsel).

The opinion of the court was delivered by

PROCTOR, J. Plaintiff brought suit against defendants in the Burlington County Court to recover damages resulting from the defendants' alleged breach of an agreement to lease a gasoline station to him. He also sought recovery for defendants' alleged fraudulent non-disclosure of the terms of an existing lease on the premises. The jury returned a verdict in favor of the plaintiff in the sum of $8,500, and on April 9, 1958 judgment was entered thereon.

The defendants neither moved for a new trial within the time permitted by *R. R.* 4:61-2, nor took an appeal from the judgment. On May 13, 34 days after the entry of the judgment, the defendants, by newly retained (present) counsel, served a notice of motion to set aside the judgment "on the ground that the said judgment was obtained by fraud and that the defendant [*sic*] has since obtained newly-discovered evidence, which would probably alter the judgment, and on the further ground, as specified under *R. R.* 4:62-2: (*a*), (*b*), (*c*), and (*f*)." The notice of motion was filed on May 19. The hearing on the motion was adjourned from May 23 to June 18. On June 5, 57 days after the entry of the judgment, the defendants filed an amended notice of motion to vacate, which included as further reasons for setting aside the April 9 judgment: (1) that there was "basic error committed in the record" in that an improper measure of damages had been employed at the trial, and there was no evidence to support the plaintiff's claim of fraud; and (2) there were "basic error[s] in the Court's charge to the jury." The trial judge entered an order denying the motion and on June 24, 1958 the defendants appealed therefrom to the Appellate Division.

The Appellate Division unanimously agreed with the trial court that both the plaintiff's alleged fraud and the "newly-discovered" evidence should have been brought to the attention of the trial court prior to the verdict of the jury. Therefore, it found that there was no abuse of discretion by the trial court in refusing to set aside the judgment for these reasons. However, despite the defendants' failure to appeal from the original judgment, the majority held that "under the particular circumstances of this case, justice will best be served by considering defendants' present application as an appeal from the original judgment." [55 *N. J. Super.* 1] The majority found that there was reversible error in the conduct of the trial and in the trial court's charge to the jury, stating that there was "* * * such an extreme departure from the proper functioning of the

adjudicative process in the trial court as to compel the conclusion that the defendants will be the victims of a manifest injustice if the judgment is permitted to stand." Accordingly, the judgment was reversed and the cause remanded for a trial *de novo* on all issues. 55 *N. J. Super.* 1 (1959). The dissenting judge was of the opinion that the trial judge did not abuse his discretion in denying the motion under *R. R.* 4:62–2, and further that the appeal could not be considered as timely made from the original judgment. He therefore concluded that the Appellate Division was without jurisdiction to review the trial errors. The plaintiff appeals to this court. *R. R.* 1:2–1(*b*).

The plaintiff does not here challenge the majority's conclusion that there were trial errors prejudicial to the defendants. His argument is confined to the narrow procedural point. Thus, the sole issue before us is whether the defendants were foreclosed from appellate review of the original judgment because they failed to make a timely motion for a new trial, *R. R.* 4:61–2, or take a timely appeal from the judgment, *R. R.* 1:3–1(*b*), 1:27*B*(*d*) and 2:3, and because they relied solely upon an appeal from the order denying their motion under *R. R.* 4:62–2 to vacate the judgment. We hold that they were not foreclosed.

▮ *R. R.* 4:62–2 does not, except in an extraordinary case, provide an appropriate means for bringing trial error under attack. The rule provides:

"On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment, order or proceeding and which by due diligence could not have been discovered in time to move for a new trial under Rule 4:61–2; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released, or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the

judgment or order. The motion shall be made within a reasonable time, and for reasons (a), (b) and (c) not more than 1 year after the judgment, order or proceeding was entered or taken. A motion under Rule 4:62–2 does not suspend the operation of any judgment, order or proceeding or affect the finality of a final judgment. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding; nor does it limit the court's power to set aside a judgment, order or proceeding for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, venire facias de novo, motions to award a repleader, to arrest a judgment, bills of review, bills in the nature of a bill of review and petitions for rehearing are superseded, and the procedure for obtaining a new trial or any relief from a judgment or order shall be by motion as prescribed in these rules or, where such relief is sought, by an independent action."

The rule is substantially the same as *Federal Rule of Civil Procedure* 60(*b*), as amended. It is therefore proper to draw on the experience of the federal courts with that rule to aid in the solution of comparable problems that arise under our rule.

*R. R.* 4:62–2 like *Federal Rule* 60(*b*) authorizes relief from a judgment on six separate and mutually exclusive grounds. *Naglieri v. Trabattoni,* 14 *N. J. Super.* 54 (*App. Div.* 1951) and see *Klapprott v. United States,* 335 *U. S.* 601, 69 *S. Ct.* 384, 93 *L. Ed.* 266 (1949). The rule expressly provides that the pendency of a motion under it does not suspend the operation or affect the finality of a final judgment. It therefore follows that a motion under the rule for relief from a final judgment does not of itself toll the running of the time for appeal from the judgment. See *Markert v. Swift & Co.,* 173 *F. 2d* 517, 519 (2 *Cir.* 1949). In this respect motions under *R. R.* 4:62–2 are unlike motions to alter or amend a judgment and motions for a new trial, *R. R.* 4:61, motions for judgment, *R. R.* 4:51–2, and motions to amend findings of fact by the trial court, *R. R.* 4:53–2. A timely motion under the latter rules must be made within 10 days after the verdict or judgment. *R. R.* 1:3–3(*f*) provides that such motions shall toll the running of the time for appeal. A motion for relief under *R. R.* 4:62–2 makes the six grounds for relief subject only to a reasonable

time limitation, and in addition restricts grounds $(a)$, $(b)$, and $(c)$, to a maximum time period of one year from the entry of judgment. Because of the more extended time periods in R. R. 4:62–2, the tolling provision was not made applicable to it. See 7 *Moore, Federal Practice, para.* 60.29, *p.* 331 (1955).

It is clear that R. R. 4:62–2$(b)$, newly discovered evidence, $(c)$, fraud, $(d)$, void judgment, and $(e)$, satisfaction, vacation of a prior judgment, *etc.,* do not confer jurisdiction on the trial court to correct trial errors. The problems are whether "mistake" in subdivision $(a)$ means trial error, and whether such error is a "reason justifying relief" under subdivision $(f)$. Originally *Federal Rule* 60$(b)$ authorized relief of a party or his legal representative from a judgment taken against him through *his* mistake, inadvertence, surprise or excusable neglect. Thus, it was clear that the rule did not embrace errors of the court. In 1946 the federal rule was amended to include mistakes made by persons other than the named party or his legal representative. See Advisory Committee Note, 1946, reprinted in 6 *Moore, para.* 60.01[8], *p.* 4008 *et seq.* (1953). And the amended rule has been held to permit relief of a party from the "mistake" of the trial judge. *O'Tell v. New York, N. H. & H. R. Co.,* 236 *F. 2d* 472 (2 *Cir.* 1956) (trial judge made a "mistake" in entering the judgment that did not reflect an essential element of jury's verdict) ; *Tarkington v. United States Lines Co.,* 222 *F. 2d* 358 (2 *Cir.* 1955) (change in the law by decision of a higher court after the judgment held to require trial court to correct its "mistake" in applying former law).

We are not called upon here to define for all purposes the term "mistake" in R. R. 4:62–2$(a)$. Whatever its scope, it does not embrace a judge's trial error. Our rules make specific provision for attack, before the trial court itself, and before the appellate courts, on erroneous factual findings and trial errors. The rules contain clear and definite time limitations for motions before the trial court, *i. e.,* 10 days

after the verdict under *R. R.* 4:51-2, or 10 days after the court's conclusions are made known to the parties in non-jury actions or the entry of the verdict of the jury under *R. R.* 4:61-2, or 10 days after the entry of judgment under *R. R.* 4:53-2 and *R. R.* 4:61-6. These time limitations may not be enlarged. *R. R.* 1:27B(*c*). The time limit of 45 days from the entry of judgment for an appeal to the Appellate Division, *R. R.* 1:3-1(*b*), 2:3, may not be enlarged unless the court grants an extension of up to 30 additional days upon a clear showing of good cause and the absence of prejudice. *R. R.* 1:27B(*d*).

█ The policies of expedition and finality which underlie these time limitations would be defeated by construing *R. R.* 4:62-2(*a*) to permit review of trial errors in the trial court at any "reasonable" time up to one year after the judgment. Where 10 day time limitations on motions before the trial court are provided, they would be obliterated if *R. R.* 4:62-2(*a*) were held to authorize essentially the same motions to be brought within the extended time period. The 45 day time limit on appeals would be immensely lengthened if trial errors were reviewable on appeal from the denial of a *R. R.* 4:62-2(*a*) motion. In promulgating rules of practice, it was not intended to have one rule rendered meaningless by another.

██ Moreover, it is established law that a motion under *R. R.* 4:62-2 is addressed to the sound discretion of the trial court, guided by equitable principles. *Shammas v. Shammas,* 9 *N. J.* 321 (1952). It follows that the trial court's decision will be upheld in the absence of an abuse of discretion. But the trial court does not have a discretionary leeway in the review of its trial errors. And appellate courts are not restricted in the review of a judgment for trial errors to a determination of whether the trial court abused its discretion. Such discretion is appropriate for cases where relief is sought under equitable principles, but not where trial errors form the basis for attack on the judgment.

An argument that trial error is embraced by "mistake" is suggested by an eminent authority. 7 *Moore, para.* 60.22[3] (1955). *Federal Rule* 60(*b*)(1), the prototype of *R. R.* 4:62–2(*a*), originally relieved the party from a judgment entered against him only through *"his* mistake, inadvertence, surprise, or excusable neglect." (Emphasis ours.) At the time that the pronoun "his" was deleted, the rule was also changed to supersede the equity bill of review for error apparent on the face of the record, which had been retained by the saving clause of the original 60(*b*). *Wallace v. United States,* 142 *F.* 2d 240 (2 *Cir.* 1944). After that amendment, *R. R.* 4:62–2 was adopted, also omitting "his" and by its terms superseding the bill of review for error apparent. Thus, the argument runs, the old equity practice under the bill of review for error apparent was included by the term "mistake" in 60(*b*)(1) and *R. R.* 4:62–2(*a*). No case is presented in support of the argument. Indeed, one federal case appears to be contrary. *Gilmore v. Hinman,* 89 *U. S. App. D. C.* 165, 191 *F. 2d* 652 (*D. C. Cir.* 1951).

We reject the argument on two grounds. First, the bill of review for error apparent could ordinarily be brought only during the time allowed for appeal from the decree. *Central Trust Co. of New York v. Grant Locomotive Works,* 135 *U. S.* 207, 10 *S. Ct.* 736, 34 *L. Ed.* 97 (1890); *Miller v. McCutcheon,* 117 *N. J. Eq.* 123, at *page* 128 (*E. & A.* 1934); *Fidelity Union Trust Co. v. North Jersey Poultry Co.,* 123 *N. J. Eq.* 259, at *page* 264 (*E. & A.* 1938). A motion under *R. R.* 4:62–2(*a*) may be made at any reasonable time within one year. There is no way, short of an amendment to the rule, to import the 45 day time limit for appeals from judgments, *R. R.* 1:3–1(*b*), 2:3, into *R. R.* 4:62–2(*a*), when motions under the latter rule are used to attack trial errors.

Second, error apparent on the face of the record is not the same thing as trial error. The bill of review for error apparent originated in the English chancery courts, in Lord Bacon's first ordinance, which authorized relief on the basis

of "error in law appearing in the body of the decree, without further examination of matters in fact." *Traphagen v. Voorhees*, 45 *N. J. Eq.* 41, at *pages* 43–44 (*Ch.* 1889). In the English chancery practice the decree recited the bill, answer and other pleadings, and the facts on which the decree was founded. In America, the decree was not so complete. Thus the error sufficient to support a bill of review in America had to be apparent on the face of the "record," which included the decree, bill, answer, and other pleadings, without an examination of the evidence. *Whiting v. Bank of United States*, 13 *Pet.* 6, 10 *L. Ed.* 33 (1839); *Shelton v. Van Kleeck*, 106 *U. S.* 532, 1 *S. Ct.* 491, 27 *L. Ed.* 269 (1883); *Hill v. Phelps*, 101 *F.* 650 (8 *Cir.* 1900); *Watkinson v. Watkinson*, 68 *N. J. Eq.* 632, at *page* 634 (*E. & A.* 1905); see former *R. S.* 2:29–52; see also *Moore & Rogers, "Federal Relief from Civil Judgments,"* 55 *Yale L. J.* 623 at *pp.* 675–78 (1946).

The narrow scope of the bill of review for error apparent on the face of the record was described by Circuit Justice Fuller (later Chief Justice of the United States) in *Hoffman v. Knox*, 50 *F.* 484, at *page* 490 (4 *Cir.* 1892):

"The general rule is that such a bill does not lie to correct a mere error, which would, in effect, render it nothing more than a substitute for an appeal.

In *Perry v. Phelips*, 17 *Ves.* *174, *177, Lord ELDON said:

'There is a great distinction between error in the decree and error apparent. The latter description does not apply to merely erroneous judgments, and this is a point of essential importance; as, if I am to hear this case upon the ground that the judgment is wrong, and that there is no error apparent, the consequence is that in every instance a bill of review may be filed; and the question whether the case is well decided will be argued in that shape, not whether the decree is right or wrong on the face of it. The cases of error apparent, found in the books, are of this sort, an infant not having a day to show cause, etc., not merely an erroneous judgment.'

So, also, a decree against the statute law is the subject for a bill of review, as, for example, a decree directing a legacy to be distributed contrary to the statute of distributions. *Story, Eq. Pl.* § 405. So where a decree was entered for the sale of mortgaged premises,

capable of division, to pay the whole mortgage debt, when only a small part of the debt was due. *James v. Fisk,* 9 *Smedes & M.* 144. And where a foreclosure decree was made contrary to the terms of the mortgage. *Mickle v. Maxfield,* 42 *Mich.* 304, 3 *N. W.* 961. These are manifest errors not open to controversy, and while the modern practice has tended to allow the court of first instance to review or reverse its own decrees, for an erroneous application of the law to the facts found, whenever an appellate tribunal would do so for the same cause, this has certainly not been carried so far as to ignore the rule in principle. That principle is that the remedy for mere error in a final decree is by appeal, and that the error apparent for which such a decree may be impeached by bill of review must be more than the result of mistaken judgment."

See also *Wootton v. Pollock,* 124 *N. J. Eq.* 167, at *pages* 172–173 *(Ch.* 1938), affirmed *per curiam* 125 *N. J. Eq.* 432 *(E. & A.* 1939), wherein *Hoffman v. Knox* was cited with approval.

Trial errors are seldom "manifest errors not open to controversy." Many matters, such as the correctness of rulings on trial motions, rulings on the admissibility of evidence, and on charges to the jury, cannot be reviewed for errors without reference to the evidence in the case. But such reference is not authorized by the bill of review. *Shelton v. Van Kleeck, supra; Swift v. Parmenter,* 22 *F.* 2d 142, at *page* 146 (8 *Cir.* 1927). Thus trial error such as the erroneous jury charge in the present case never would have been subject to challenge by a bill of review, which was a device invented for the correction of a chancery decree for legal deficiencies found on the face of the decree. It was not adapted for use in proceedings where trial was by jury.

██ *R. R.* 4:62–2(*f*) does not apply to the present case. The defendants urged before the trial judge, as before us, that he had the power to reverse trial errors under *R. R.* 4:62–2, as "mistake" under subdivision (*a*), or as an "other reason justifying relief" under subdivision (*f*). We have no doubt that trial errors can never in themselves justify relief under subdivision (*f*). No specific time limit is imposed on motions under that provision. Everything said above about subdivision (*a*) and its relation to the time

limits of other rules also applies here. See *Perrin v. Aluminum Co. of America,* 197 *F.* 2d 254 (9 *Cir.* 1952). Moreover, relief under subdivision (*f*), as under (*a*), is a matter for the trial court's discretion. Thus, what has been said on that score about (*a*) is just as meaningful here.

We do not decide whether, in other cases, counsel's failure to seek appropriate appellate remedies would be a proper "reason" for which relief under subdivision (*f*) might be granted by the trial court. See *Ackermann v. United States,* 340 *U. S.* 193, 71 *S. Ct.* 209, 95 *L. Ed.* 207 (1950). The very essence of that subdivision is its ability to afford relief in exceptional situations. Thus strict bounds should never confine its scope. But the present case, as it was presented to the trial judge, posed only the question whether trial errors in themselves properly invoke the discretionary power of a trial judge under *R. R.* 4:62–2(*a*) and (*f*). We have held that they do not. Whatever grounds now exist, and which, if brought to the attention of the trial court, might have justified relief, never came into existence until after the trial court had ruled on the motion as presented, and until after it no longer had jurisdiction of the case by reason of the appeal from its denial of the motion. *Cf. Hill v. Hawes,* 320 *U. S.* 520, 64 *S. Ct.* 334, 88 *L. Ed.* 283 (1944). Even at that time, appeal from the judgment might have been had. See *R. R.* 1:27*B*(*d*).

It can readily be seen, however, that a conclusion contrary to ours may be plausible, and may, in the absence of previous authoritative interpretation, be a conclusion upon which counsel could reasonably have relied. The treatise by Professor Moore, an eminent authority in the field, lends some support to counsel's interpretation. It is understandable that defendants' counsel would believe that by alleging trial errors as "mistake" before the trial court under *R. R.* 4:62–2(*a*) and as a reason justifying relief under (*f*), he was preserving the right to a review of those errors on appeal. And he could believe that upon appeal to the Appellate Division of the denial of the motion, trial errors

would be reviewed, where he had made the motion within the time allowed for an appeal. The reasonableness of his view is pointed up sharply by the dilemma facing counsel for the defendants. There were two grounds on which he could believe that the judgment was subject to attack, *i. e.*, (1) newly discovered evidence and fraud, and (2) trial errors. A motion under *R. R.* 4:62–2 was necessary for attack on the first ground. But had he prosecuted an appeal for trial errors, the trial court would have been without jurisdiction of his motion under *R. R.* 4:62–2.

■ The correct course to have taken in such a case would have been to have perfected the appeal from the original judgment, and then to have sought a partial remand to the trial court for determination of the motion. An analogous practice is indicated by *R. R.* 3:7–11 for motions for a new trial on newly discovered evidence in criminal causes. But our rules of civil practice have no such provision, and counsel's failure to appeal and apply for a partial remand should not in this case be charged against his clients, or weigh in favor of what the Appellate Division called an "indefensible" judgment.

The present case is comparable to the situation in *State v. Petrolia*, 21 *N. J.* 453 (1956). There counsel for a defendant who had been convicted of armed robbery misconstrued the phrase "determination of guilt" in *R. R.* 1:3–3(*c*), and believed that the time for taking an appeal was tolled by his motion for a new trial made within 10 days of the judgment of conviction, but not within 10 days of the jury's verdict. We held that *R. R.* 1:3–3(*c*), properly interpreted, tolls the time for appeal only where a motion for a new trial is made within 10 days of the rendition of the verdict, and not the entry of judgment. Hence, the appeal was out of time. However, we held that there was sufficient ambiguity in the language of *R. R.* 1:3–3(*c*) "to have been the cause of misinterpretation even by astute counsel." *Id.*, 21 *N. J.* at *page* 457. Although *State v. Petrolia* was a criminal case, we think that the same principle should be

applied to the case *sub judice,* where *R. R.* 4:62–2 could be susceptible of conflicting interpretations, the defendants having moved within the time allowed for taking an appeal.

 Plaintiff argues that the Appellate Division's treatment of this appeal as one from the original judgment violated his vested right in that judgment and the principle of finality of judgments. The first answer is that, because the plaintiff's judgment was under attack 11 days before the expiration of the time for appeal, he never had a vested right. Such a right vests when the time for appeal from the judgment has passed, *In re Pfizer's Estate,* 6 *N. J.* 233 (1951), but not before. Even after that time, upon a proper showing under *R. R.* 4:62–2, such a right may be divested. See also *R. R.* 1:27B(*d*).

The cases of *In re Pfizer's Estate, supra,* and *In re Nuese's Estate,* 15 *N. J.* 149 (1954), cited by the plaintiff, are not applicable. In those cases, the time for appeal had expired before any matter had been presented to the court, and the court found no ambiguity in the rules.

The principle of finality of judgments is one of repose. It dictates that litigation must eventually be ended and that at some point the prevailing party be allowed to rely confidently on the inviolability of his judgment. But it is not an absolute rule, and must be weighed in the balance with the equally salutary principle that justice should be done in every case. *Cf. Cammarata v. Public Service Co-Ordinated Transport,* 124 *N. J. L.* 38 (*E. & A.* 1940). The plaintiff was aware before the time for appeal had run that the defendants had placed his judgment in jeopardy. He had no right to rely on the inviolability of his judgment while the defendants' attack threatened it. Thus, the principle of finality is not impaired by considering the present case as though a timely appeal had been taken from the original judgment.

As we have said above, the procedural issue was the only one presented for our decision. The question of the propriety of the Appellate Division's views on the proof of

damages was not briefed or argued before us. Hence, we express no opinion thereon.

For the reasons stated above the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.