**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2745-18T3

TRACEY LOCKWOOD,

    Plaintiff-Respondent,

v.

FRANK N. LOCKWOOD, II,

    Defendant-Appellant.

_____

Argued telephonically May 18, 2020 –
Decided June 18, 2020

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-0606-18.

Mark J. Molz argued the cause for appellant.

Mark Steven Guralnick argued the cause for respondent.

PER CURIAM

Defendant Frank Lockwood appeals from the trial court's January 11, 2019 order denying his motion to vacate certain portions of the April 19, 2018 final judgment of divorce (FJD) entered against him by default. We affirm.

Plaintiff filed for divorce after over eighteen years of marriage. The parties have two children. One was then an unemancipated daughter in high school; the second, an emancipated daughter in her early twenties. Defendant was duly served and did not answer. Eventually, he was served with a notice of a proposed final judgment seeking an award of alimony and child support, and an order equitably distributing the parties' assets and debts. Defendant appeared pro se at the default hearing.

Plaintiff described her dire financial straits, which were exacerbated by two circumstances. First, plaintiff is unable to work as a result of injuries from an accident. Since 2008, plaintiff has relied on: Social Security Disability income that left her with $824 in disposable monthly income for herself; $369 in Social Security Disability for her daughter; and assorted other governmental assistance programs.

Second, defendant's support ceased following his incarceration. Defendant was arrested in November 2011 and later convicted of an offense. Previously, he had earned $22 an hour as a truck driver with a commercial

driver's license. After defendant's release, plaintiff obtained an order in November 2015 for $100 a week in spousal support and $16 a week in child support; the court imputed $400 a week income to defendant.

At the default hearing, defendant declined to cross-examine plaintiff, although he stated he did not agree with the entirety of her testimony. In response to plaintiff's counsel's questioning, he stated he earned only $10 an hour until he suffered a disabling arm injury; and he was then receiving workers' compensation payments.

Plaintiff's counsel asked the court to award $200 a week in spousal support, based on imputing defendant's pre-incarceration wage, noting that his reduced earning capacity resulted from his own criminal behavior. Counsel also asked the court to equitably distribute to her the home she purchased in 2012 for $200,000. To buy the home, she used some of a $380,000 settlement she obtained in December 2011 for a personal injury she sustained at a McDonald's restaurant in 2008. She stated she used the remainder for legal fees for defendant, until she became convinced of his guilt; and for living expenses and a new vehicle. She also asked the court to require defendant to pay half of a $5000 loan the parties took out against the previous marital home, and half of

A-2745-18T3

any outstanding tax liabilities; and to pay all of a $69 violation he incurred during the marriage.

The court imputed $20 an hour to defendant and awarded plaintiff $150 a week in alimony for fifteen years (although the FJD mistakenly provided only for seven years of alimony). The court calculated child support of $143 based on the Child Support Guidelines, although the separate child support order prepared two months after the FJD did not include the parties' respective incomes upon which it was based, nor does the record before us include the worksheet. The court ordered plaintiff to continue to maintain the minor child's health insurance, and required the parties to split unreimbursed medical expenses over $250 in accordance with the guidelines.

The court equitably distributed the house purchased with the personal injury settlement proceeds. As requested, the court divided the $5000 outstanding home loan and tax debt, and ordered defendant to pay his $69 violation (although the FJD omitted this as well).

Defendant did not file a timely appeal from the judgment. Instead, seven months after entry of the FJD, he filed a counseled motion for relief from the judgment. Defendant did not state in his notice of motion the specific grounds

upon which he sought relief.[1] However, in his supporting certification, defendant focused on his excusable neglect in answering the complaint, which indicated that he was relying on Rule 4:50-1(a), which provides for relief from judgments in cases of excusable neglect.

Defendant asserted that his neglect was excusable because he could not afford a lawyer, and he believed that the uncontested divorce did not involve alimony, child support, or equitable distribution of the house. He also contended he had a meritorious defense. Regarding the issue of alimony and child support, he asserted the court erred in imputing $20 an hour to him, as he earned only $10 an hour since his release from prison in August 2015. As a result of an October 2017 injury, he was receiving $560 biweekly in workers' compensation benefits on the date of the default hearing. He attached a copy of his 2017 tax return that reflected gross annual income of just under $14,000.[2] He also suggested that the child support calculation did not adequately account for their

---

[1]  It is unclear whether defendant filed a brief that identified the grounds for relief, as none is referenced in the notice of motion. But see R. 4:50-1 (requiring a supporting brief).

[2]  However, he failed to provide an appropriate foundation for the document. See R. 1:6-6; Pressler & Verniero, Current N.J. Court Rules, comment on R. 1:6-6 (2020) (stating that "documents must be incorporated by reference in an appropriate affidavit or certification, which properly authenticates material which is otherwise admissible").

A-2745-18T3

daughter's Social Security Disability income. Regarding equitable distribution, defendant argued that the $380,000 personal injury settlement was subject to equitable distribution.

Plaintiff cross-moved for the court to correct the FJD to accurately reflect the court's oral decision regarding the duration of alimony, and the disposition of the parties' debts, and the violation.

The court denied defendant's request for relief on the papers, and ordered correction of the FJD as plaintiff requested. The court held defendant's failure to obtain counsel was not excusable neglect. The court also noted that defendant was afforded an opportunity to participate in the default hearing, and he failed to seek reconsideration or file an appeal after entry of the FJD. With respect to defendant's asserted defenses, the court held that defendant had not shown exceptional circumstances, or demonstrated that "it would be unfair or inequitable to enforce" the judgment. The court noted that the court imputed income based on the "unchallenged evidence" plaintiff presented regarding defendant's past income.

On appeal, defendant contends the trial court abused its discretion, in declining to correct the alleged errors in the original FJD: the court imputed too much income to defendant; erred in awarding all marital assets to plaintiff; and

failed to consider equitable distribution in calculating alimony. Defendant relies on both subsection (a), providing for relief from a judgment for excusable neglect, and subsection (f), for "any other reason justifying relief."

We review the trial court's decision for an abuse of discretion. Mancini v. EDS, 132 N.J. 330, 334 (1993). A motion to vacate default judgment pursuant to Rule 4:50-1 implicates two often competing goals: the desire to resolve disputes on the merits, and the need to efficiently resolve cases and provide finality and stability to judgments. "The rule is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Manning Eng'g Inc. v. Hudson County Park Comm'n, 74 N.J. 113, 120 (1977). The rule establishes six alternative grounds for relief from a final judgment, whether obtained by default or after a trial on the merits.[3] We focus

---

[3] The six grounds are: "(a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order." R. 4:50-1.

A-2745-18T3

on defendant's claim of excusable neglect under Rule 4:50-1(a), and his claim of "any other reason justifying relief," under Rule 4:50-1(f).

Regarding the first, it is well-settled that a defendant claiming excusable neglect must also demonstrate that he or she has a meritorious defense, as it would make little sense to reopen a default judgment if the ultimate result will be the same. See US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 469 (2012). A meritorious defense need be more than a bald denial, but less than a showing of likelihood of prevailing on the merits. 10 James W. Moore, Moore's Federal Practice - Civil ¶¶ 55.70[2][d], 55.70[3] (2020) (interpreting federal rule).

Against that test, we acknowledge that defendant has presented a meritorious defense, without deciding whether it would ultimately be a successful one. As for imputed income, defendant has raised a plausible defense that it was unreasonable to impute $20 an hour, as he had not reached that level since his incarceration, several years before the default hearing. Although plaintiff's counsel argued that defendant's reduced earning capacity resulted from his own voluntary, criminal conduct, we have eschewed a bright line test in such circumstances. Kuron v. Hamilton, 331 N.J. Super. 561, 570-72 (App. Div. 2000). On the other hand, defendant has not presented any evidence regarding his efforts to obtain a job utilizing his CDL, or any evidence that his

criminal record actually impeded his ability to earn more than minimum wage.[4] Also, it is unclear whether the trial court considered its equitable distribution decision in calculating alimony, as the court did not expressly review the alimony factors under N.J.S.A. 2A:34-23(b), including -23(b)(10), pertaining to the equitable distribution of property.

Regarding the court's distribution of the entirety of the house she purchased with her personal injury settlement, we acknowledge that the court did not perform the analysis required by Landwehr v. Landwehr, 111 N.J. 491, 493 (1988). The Landwehr Court held that the portion of a personal injury settlement intended to compensate lost earnings and medical expenses is subject to equitable distribution, but the portion intended to compensate for pain, suffering, and physical disability is not. Ibid.

Even if we presume for argument's sake that defendant has presented a meritorious defense, he has failed to establish excusable neglect. Excusable neglect refers to a default that is "'attributable to an honest mistake that is compatible with due diligence or reasonable prudence.'" Guillaume, 209 N.J. at

---

[4] Defendant is free to file a motion to modify the calculation of alimony and child support based on a change of circumstance – that he has been unable to achieve the imputed income, despite diligent efforts. However, that would not attack the correctness of the underlying judgment. We express no views as to the ultimate merits of such a motion.

A-2745-18T3

468 (quoting Mancini, 132 N.J. at 335). His claim that he did not understand the nature of the default hearing is belied by his acknowledgement at the hearing that he received the Notice of Proposed Final Judgment, which we presume set forth plaintiff's request for entry of a final judgment that addressed alimony, child support, and equitable distribution. To the extent defendant asserts that the notice was deficient, we shall not reach the issue, as he failed to include the notice in the record on appeal. See State v. Cordero, 438 N.J. Super. 472, 489 (App. Div. 2014) (denying consideration of an issue when "defendant has failed to provide us with an adequate record to review a decision on the merits").

Defendant's alternative basis for excusable neglect – his inability to hire a lawyer – also must fail. Defendant admitted at the default hearing that he was served with the summons and complaint. He could have filed an answer pro se. Defendant presents no explanation for his failure to do so. Cf. Tradesmens Nat'l Bank & Trust Co. v. Cummings, 38 N.J. Super. 1, 4 (App. Div. 1955) (affirming finding of excusable neglect where defendant's "mental upset" over wife's death and son's illness led him to ignore complaint).

Nor can defendant succeed by resort to subsection (f). The subsection provides relief "only when truly exceptional circumstances are present and only when the court is presented with a reason not included among any of the reasons

10

subject to" Rule 4:50-1(a), (b) or (c). Baumann v. Marinaro, 95 N.J. 380, 395 (1984). Just as inability to afford a lawyer does not satisfy excusable neglect under subsection (a), it does not satisfy exceptional circumstances under subsection (f). As we stated in In re Estate of Schifftner, 385 N.J. Super. 37, 44 (App. Div. 2006):

> [I]ndigence is not, in these circumstances, an "extraordinary" reason justifying relief. It is an unfortunate fact that many litigants are unwilling to obtain, or unable to afford, representation. Nevertheless, our Rules specifically permit the real party in interest to appear in any court. R. 2:21-1(a). . . . Since pro se litigants are afforded the opportunity to be heard, we cannot conclude that indigence alone is so extraordinary as to justify the invocation of R. 4:50-1.

Finally, a mere claim of trial court error cannot suffice as a basis for extraordinary relief under subsection (f). Hodgson v. Applegate, 31 N.J. 29, 40 (1959) (stating "[w]e have no doubt that trial errors can never in themselves justify relief under subsection (f)"). Thus, defendant's claim that the trial court at the default hearing committed error – in imputing his income, and denying him any interest in plaintiff's personal injury recovery – cannot support relief under subsection (f). Were it otherwise, then relief under subsection (f) would provide an opportunity, unlimited by time, to seek review of a trial court error, thereby undermining the strict time limits for appeals. Id. at 37, 41; see also

11

<u>Schifftner</u>, 385 N.J. Super. at 43 (declining to grant subsection (f) relief, noting that "[o]rdinarily, . . . <u>R.</u> 4:50-1 may not be used as a substitute for appeal"); <u>Wausau Ins. Co. v. Prudential Prop. & Cas. Ins. Co.</u>, 312 N.J. Super. 516, 519 (App. Div. 1998) (stating, with regard to the "mistake" ground for relief under subsection (a), which must be raised within one year of judgment, under <u>Rule</u> 4:50-2, "[t]he rule may not be used to convert a 'trial error' from which an appeal must be taken within 45 days into a 'mistake' which may be corrected within one year" (quoting <u>Di Pietro v. Di Pietro</u>, 193 N.J. Super. 533, 539 (App. Div. 1984))).[5]

In sum, we discern no abuse of discretion in the trial court's denial of relief under <u>Rule</u> 4:50-1(a), or (f).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] We recognize that the Court declined to "decide whether, in other cases, counsel's failure to seek appropriate appellate remedies would be a proper "reason" for which relief under subdivision (f) might be granted by the trial court." <u>Hodgson</u>, 31 N.J. at 41. However, we need not address the issue, as defendant did not expressly raise it.

A-2745-18T3