895 A.2d 1202

IN THE MATTER OF THE ESTATE OF FLORENCE
F. SCHIFFTNER, DECEASED.

Superior Court of New Jersey
Appellate Division

Argued November 1, 2005—Decided April 25, 2006.

Before Judges KESTIN [1], LEFELT and SELTZER.

*Ian J. Hirsch,* argued the cause for appellant.

*Carl E. Klotz,* argued the cause for respondent (*Klotz and McCann,* attorneys; *Mr. Klotz,* on the brief).

The opinion of the court was delivered by

SELTZER, J.S.C. (temporarily assigned).

This dispute between Richard Schifftner, (to whom we refer as "plaintiff"), and his sister, Linda Jackson ("defendant"), requires a determination of plaintiff's ability to contest the probate of his mother's will more than four months after it had been admitted to probate. The judge initially considering the issue decided plaintiff's challenge to the probate of his mother's will was untimely filed and dismissed the complaint. We agree with the result, although for reasons other than those expressed by the motion judge, and, therefore, affirm.

---

[1] Judge Kestin did not participate in oral argument. However, with the consent of all parties, he has joined in this opinion. *R.* 2:13–2(b).

The mother of the parties, Florence F. Schifftner, executed a will on October 30, 2001, and died on August 5, 2003. On August 13, 2003, plaintiff learned of the will, which substantially favored defendant, and wrote to the Bergen County Surrogate requesting that the will not be admitted to probate. That letter was treated as a caveat. Slightly more than three months later, defendant, who had been named the executrix, filed a complaint seeking to discharge the caveat and admit the will to probate. She obtained an Order to Show Cause directed at plaintiff, who filed no responsive papers. Instead, he appeared on the return date. Defendant, having had no indication that the matter was contested, was not then present.

After a telephone call to defendant's attorney, the judge adjourned the proceeding and advised plaintiff "to get a lawyer and to do something." Nevertheless, plaintiff appeared on the adjourned return date without an attorney, explaining that he could not afford representation.

The judge proceeded to hear defendant's application and began by explaining to plaintiff that individuals, so long as they are competent and free of undue influence, may devise their estates as they wish. Plaintiff interrupted, indicating that "I have a police report that states that she has Alzheimer's. I have another police officer that is willing to come in if he can get away." He also advised the judge that a witness was available to testify as to a statement made by his father before his death, to the effect that "she was not of well mental health." Finally, plaintiff represented that "my mother was considered as legally blind by the State of New Jersey, with Alzheimer's by UMDNJ."

In response, defendant's attorney told the judge that the will had been drawn by an attorney who had executed a certification in anticipation of the proceedings on the caveat. That certification is not included in the record before us but the judge examined it and said:

> Okay, Edward Hook, attorney-at-law. The will was signed October 30, 2001. It says she was not clean. She had poor vision. He discussed the will with her.

Read it to her verbatim. I am satisfied that there is nothing here to support the caveat and I am going to grant the relief sought.

That relief included the admission of the will to probate and an order removing plaintiff from decedent's home, in which he was then living. The decision was memorialized by an order dated January 16, 2004.

Plaintiff did not appeal. He took no action until eight months later when, on August 20, 2004, he secured a loan from his girlfriend and retained an attorney who filed a complaint respecting the will. The complaint did not attack the judgment admitting the will to probate but, instead, sought a declaration that the will was the product of undue influence. An Order was entered requiring defendant to show cause on October 15, 2004, why the matter should not be set down for an evidentiary hearing "to determine whether the Last Will and Testament of Florence F. Schifftner was the product of undue influence...." No reference was made to the January 16, 2004, judgment admitting the will to probate.

On September 17, 2004, defendant filed a motion to dismiss the complaint, arguing that the issues had already been litigated when the will was admitted to probate. One week later, plaintiff moved for an order extending the four-month period within which an action may be brought to challenge a judgment of probate.[2] *See* *R.* 4:85-1. The basis for his request was his lack of knowledge of the law and his inability to afford an attorney to represent him at the time the probate judgment was entered. Plaintiff asserted that he had moved to challenge the probate as soon as he was able to secure the funds needed to retain an attorney. The cross-motions were heard on October 15, 2004, after which the motion judge dismissed plaintiff's complaint as untimely.

_____

[2] The motion filed by plaintiff sought to extend the time within which he could attack the judgment. Nevertheless, it appears that the motion was treated as if it sought relief from the judgment and as if defendant had objected on grounds of timeliness.

The judge felt that *R.* 4:85–1 compelled the dismissal. That rule provides:

> If a will has been probated by the Surrogate's Court or letters testamentary or of administration, guardianship or trusteeship have been issued, any person aggrieved by that action may, upon the filing of a complaint setting forth the basis for the relief sought, obtain an order requiring the personal representative, guardian or trustee to show cause why the probate should not be set aside or modified or the grant of letters of appointment vacated, provided, however, the complaint is filed within four months after probate or of the grant of letters of appointment, as the case may be, or if the aggrieved person resided outside this State at the time of the grant of probate or grant of letters, within six months thereafter. If relief, however, is sought based upon *R.* 4:50–1(d), (e) or (f) or *R.* 4:50–3 (fraud upon the court) the complaint shall be filed within a reasonable time under the circumstances.

In reaching his conclusion, the motion judge relied upon *In re Small*, 85 *N.J.Super.* 220, 204 *A.*2d 368 (App.Div.1964). That case involved an attack on a judgment admitting a will to probate some six years earlier. The application in *Small* was based "on charges that the will was the product of undue influence and that the testator lacked testamentary mental capacity." *Id.* at 225, 204 *A.*2d 368.

Although the applicants in *Small* supplied no excuse for their delay in filing the application, they asserted that the predecessor of *R.* 4:50–1(f) gave them the right to extend the time period provided by the predecessor of *R.* 4:85–1. *Rule* 4:50–1 provides for relief from a judgment in six enumerated circumstances. Subsection (f) allows relief "for any other reason justifying relief from the operation of the order or judgment." The application of this subsection requires the demonstration of "exceptional circumstances." *Court Inv. Co. v. Perillo*, 48 *N.J.* 334, 341, 225 *A.*2d 352 (1966); *Woodrick v. Jack J. Burke Real Estate*, 306 *N.J.Super.* 61, 77–78, 703 *A.*2d 306 (App.Div.1997), *appeal dismissed*, 157 *N.J.* 537, 724 *A.*2d 799 (1998).

The *Small* court rejected the argument:

> It is obvious that if petitioners can move to vacate a judgment of probate on the grounds of undue influence or lack of mental capacity of the testator, under subsection (f) of [*R.* 4:50–1], there would be no reason for promulgation of [*R.* 4:85–1], and the time limitation to appeal from such judgment—[four] months after its

entry in the case of residents and six months for non-residents—would be meaningless. In promulgating rules of practice it was not intended to have one rule rendered meaningless by another. *Hodgson v. Applegate*, 31 *N.J.* 29, 37, 155 *A.*2d 97 (1959).

[*In re Small, supra*, 85 *N.J.Super.* at 225, 204 *A.*2d 368.]

The holding was summarized as follows:

[*R.* 4:50(f)] cannot provide a basis for relief in this case. Subsection (f) contemplates exceptional, extraordinary and compelling grounds for relief which do not fall within those which could be asserted under the provisions of [*R.* 4:85–1.] [*Ibid.*]

The situation here is quite different from that presented in *Small.* Plaintiff does not seek to vacate the judgment admitting his mother's will to probate because she was incompetent or under the improper influence of his sister; once the judgment is vacated, he intends to advance those arguments to prohibit the will from being probated. He argues here that his indigence prevented him from attacking the will sooner and that indigence is an exceptional circumstance allowing him relief under *R.* 4:50–1(f).

The motion judge and the parties failed to appreciate the basis for defendant's request. It was not, as in *Small*, the alleged underlying infirmity in the will itself. Rather, plaintiff here attacked the integrity of the process resulting in the probate of the will. *Small* imposes no impediment to that attack any more than it would prevent an effort to vacate a judgment of probate brought promptly after an aggrieved person first learns of the probate. *See In re Green*, 175 *N.J.Super.* 595, 421 *A.*2d 600 (App.Div.1980) (*R.* 4:50–1(f) permits a challenge to probate judgment more than eleven months after probate if brought within a reasonable time after notice of the judgment).

*R.* 4:85–1 has the effect of reducing the timeframes for relief under *R.* 4:50–1(a), (b), and (c) from one year to four months or six months when the judgment being attacked involves the probate of a will. *In re Ferrulli*, 105 *N.J.Super.* 217, 251 *A.*2d 487 (Cty.Ct. 1969). The rule does not, however, "control applications brought under" *R.* 4:50–1(d), (e), or (f). Applications under those subsections must be brought within a reasonable time under either *R.*

4:50 or *R.* 4:85. *In re Will of Ranney,* 240 *N.J.Super.* 337, 342 n. 2, 573 *A.*2d 467 (App.Div.1990) *aff'd,* 124 *N.J.* 1, 589 *A.*2d 1339 (1991).

The motion judge's reliance on *Small* to justify the dismissal was, therefore, misplaced. Nevertheless, we believe the result was mandated by the facts of this case even without an inquiry into the reasonableness of the delay. This appeal presents the legal question of whether an inability to afford counsel constitutes a "reason justifying relief from the" judgment of probate pursuant to *R.* 4:50–1(f). Since no special deference would be due to the treatment of this legal issue by a motion judge, *Manalapan Realty L.P. v. Tp. Committee,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995), we exercise our original jurisdiction, pursuant to *R.* 2:10–5, to decide this dispute.

Ordinarily, the failure to appeal the order admitting his mother's will to probate would be fatal to plaintiff's application because resort to *R.* 4:50 may not be used as a substitute for appeal. *See Hodgson v. Applegate,* 31 *N.J.* 29, 36, 155 *A.*2d 97 (1959) ("Our rules make specific provision for attack, before the trial court itself, and before the appellate courts, on erroneous factual findings and trial errors."); *Wausau Ins. Co. v. Prudential Prop. & Cas. Ins. Co.,* 312 *N.J.Super.* 516, 519, 711 *A.*2d 1354 (App.Div.1998) ("It is well established that an *R.* 4:50 motion may not be used as a substitute for a timely appeal"); *DiPietro v. DiPietro,* 193 *N.J.Super.* 533, 539, 475 *A.*2d 82 (App.Div.1984) ("The rule may not be used to convert a 'trial error' from which an appeal must be taken within 45 days into a 'mistake' which may be corrected within one year.")

Assuming for a moment that plaintiff's claims at the adjourned return date of the original Order to Show Cause were sufficient to raise factual issues concerning the decedent's capacity and, possibly, the existence of undue influence, so that the discharge of the caveat was mistaken, plaintiff's only option was to appeal. His failure to do so precludes this later, collateral attack. "The policies of expedition and finality which underlie these time limita-

tions would be defeated by construing [*R.* 4:50–1] to permit review of trial errors in the trial court at any "reasonable" time up to one year after the judgment." *Hodgson v. Applegate, supra,* 31 *N.J.* at 37, 155 *A.*2d 97.

■ Plaintiff argues that his indigence constitutes the type of "other reason" that justifies relief under *R.* 4:50–1(f) and, presumably, excuses his failure to appeal. We conclude that indigence is not, in these circumstances, an "extraordinary" reason justifying relief. It is an unfortunate fact that many litigants are unwilling to obtain, or unable to afford, representation. Nevertheless, our Rules specifically permit the real party in interest to appear in any court. *R.* 2:21–1(a). Although pro se litigants are required to abide by the Rules, *Venner v. Allstate,* 306 *N.J.Super.* 106, 110, 703 *A.*2d 330 (App.Div.1997), they are entitled to the same protections afforded to represented litigants. *Rubin v. Rubin,* 188 *N.J.Super.* 155, 159, 457 *A.*2d 12 (App.Div.1982). Since pro se litigants are afforded the opportunity to be heard, we cannot conclude that indigence alone is so extraordinary as to justify the invocation of *R.* 4:50–1.

■ There are circumstances when the interest of an individual is so important that the failure to have counsel fatally infects any judgment adversely affecting that interest. Accordingly, we require counsel when a litigant faces a "consequence of magnitude." *Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 295, 277 *A.*2d 216 (1971). A criminal prosecution that threatens actual incarceration is an example of such an interest. *Ibid.* The loss of a fundamental constitutional right, such as an interference with the parental relationship, is another. *See Crist v. N.J. Div. Youth & Family Services,* 135 *N.J.Super.* 573, 343 *A.*2d 815 (App.Div.1975).

When the consequences are less severe, the failure of representation is not fatal. The Supreme Court has held that the possibility of losing a civil suit does not implicate the need to have counsel. *See Eaton v. Eaton,* 119 *N.J.* 628, 645, 575 *A.*2d 858 (1990) ("We need not precisely define the outer limits of the phrase 'consequence of magnitude' to decide that it does not include the

increased risk of liability in related civil litigation between private parties."). As in *Eaton*, we are satisfied that the increased likelihood that plaintiff will not prevail in his civil litigation does not require him to have counsel. His inability to retain counsel, therefore, was not such an extraordinary circumstance as to require relief from the judgment under *R.* 4:50–1.

Affirmed.