**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3058-17T4

PACIFIC UNION FINANCIAL, LLC,

    Plaintiff-Respondent,

v.

DOUGLAS CARTER,

    Defendant-Appellant.

_____

Argued February 25, 2019 – Decided March 11, 2019

Before Judges Sabatino and Haas.

On appeal from Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. F-014322-16.

John J. Jacko, III, argued the cause for appellant (Fellheimer & Eichen, LLP, attorneys; Alan S. Fellheimer, of counsel and on the briefs; Gleb Epelbaum and David C. Bennett, on the briefs).

Benjamin S. Noren argued the cause for respondent (Hinshaw & Culbertson, LLP, attorneys; Benjamin S. Noren, on the brief).

PER CURIAM

In this residential mortgage foreclosure matter, defendant Douglas Carter appeals from the February 16, 2018 Chancery Division order denying his motion to vacate a final default judgment of foreclosure entered against him on April 5, 2017. We affirm substantially for the reasons expressed by Judge Francis R. Hodgson, Jr. in his thorough February 16, 2018 written decision.

We begin by summarizing the salient facts. On September 5, 2014, defendant executed a $521,977 note and mortgage to the original lender, American Neighborhood Mortgage Company, LLC. On September 8, 2014, the mortgage was recorded in the Office of the Ocean County Clerk. The mortgage was subsequently assigned to plaintiff Pacific Union Financial, LLC.

Under the terms of the mortgage, defendant was required to make monthly payments of $2644.78 in principal and interest, plus additional amounts to cover his escrow obligations.[1] The mortgage was for a thirty-year term, which would

---

[1] The exact amount of the monthly escrow payment is not set forth in the record. Defendant later certified that his total monthly payment, including the escrow, was "in excess of $4500 per month[,]" which meant he was paying at least $1850 each month toward such items as property taxes, homeowners insurance, and mortgage insurance. However, other documents in the record, including a "Statement of Amount Due" attached as an exhibit to plaintiff's February 6, 2017 Certification of Proof of Amount Due and Schedule, indicate that defendant paid approximately $2200 per month toward his escrow obligations.

expire on September 1, 2044, and defendant paid 4.5% annual interest on the loan.

Fifteen months after securing the loan, defendant defaulted by failing to pay the December 1, 2015 monthly installment. Plaintiff filed its complaint for foreclosure on May 23, 2016, and defendant defaulted by failing to answer. On August 29, 2016, the court entered default against defendant. On April 5, 2017, the court filed the final judgment of foreclosure. By that time, defendant's obligation to defendant had grown to $563,323.92, which was $41,346.92 more than the original amount he borrowed.

Despite the entry of the default, plaintiff maintained the file on a "loss mitigation hold," and sent a letter to defendant on April 11, 2017 offering him the opportunity to qualify for a permanent modification of the mortgage. The letter stated that plaintiff "want[ed] to continue to work with [defendant] to modify [his] mortgage and help make [his] payments more affordable." It advised defendant that he "may be eligible for a modification" if he was able "to make [three,] new affordable payments during a trial period" in a "timely manner." These monthly Trial Period Plan (TPP) payments were set at $2247.64.

The letter further stated that "[a]fter all trial period payments are timely made, [defendant's] mortgage will be permanently modified." Significantly, however, the letter did not provide any information as to the terms of the "permanent modification" if defendant met the qualifying requirements. Thus, among other things, the letter did not set forth the principal amount of the new mortgage, its due date, the interest rate, or any of the other terms of payment.[2]

Defendant certified that he signed and returned a copy of the letter to defendant, and made the three TPP payments, together with four additional payments through November 2017, while waiting for "the final paperwork setting forth the new terms of the [m]ortgage." Because defendant had completed the TPP, plaintiff sent him a letter on November 21, 2017, offering to permanently modify his current mortgage under the terms set forth in the letter. This letter explained that defendant had "been approved for a[] Home Affordable Modification." To finalize the modification, defendant had to make

---

[2] Defendant later submitted a certification in support of his motion to vacate the default judgment in which he stated that he believed the modified mortgage would provide for "substantially lower monthly [m]ortgage payments compared to the ones that [he had] paid in the past." He also asserted that his "understanding based on the [April 11, 2017] [l]etter [was] that, after [he] made all three [t]rial [p]eriod [p]ayments, the [m]ortgage would be permanently modified, and [his] new monthly payments would be substantially similar to the [t]rial [p]eriod [p]ayments." However, as Judge Hodgson found, nothing in the letter objectively supports this contention.

4

three monthly payments that had "be[en] set at an amount at or around what [his] monthly payments would be with a permanent modification."

By this time, defendant's outstanding debt to plaintiff had risen over $94,000 from $521,977 to $616,333.93, due to his non-payment of principal, interest, and escrow obligations in the months following his default almost two years earlier in December 2015. Under the proposed permanent modification, plaintiff agreed to give defendant a new thirty-year term on the mortgage with a March 1, 2048 maturity date, and lowered his annual interest rate from 4.5% to 4.25%. His new monthly mortgage obligation would be $5076.31, made up of $2867.58 for principal and interest, and $2208.73 for escrow.

Defendant did not accept the terms of the proposed permanent modification, and plaintiff lifted the loss mitigation hold on the file. Defendant then filed a motion to vacate the final judgment of foreclosure under Rule 4:50-1(e) and (f). Defendant asserted that the mortgage was permanently modified as soon as he made the three TPP payments, and that his new monthly obligation going forward should have been in the same amount ($2247.64) as those payments, even though that sum would barely cover his required monthly escrow. Defendant argued that because of this alleged modification, he was entitled to relief under Rule 4:50-1(e), which provides that the court may relieve

a party from a final judgment when it is "no longer equitable that the judgment . . . should have prospective application."  He also alleged that his completion of the TPP represented "exceptional circumstances" which warranted vacating the foreclosure judgment under Rule 4:50-1(f).  In re Estate of Schifftner, 385 N.J. Super. 37, 41 (App. Div. 2006).

In a detailed written decision, Judge Hodgson carefully considered and rejected defendant's contentions.  The judge found that the April 11, 2017 letter was "sufficiently clear and identifie[d] the offer as a 'trial period' and not a permanent modification."  This conclusion, the judge determined, was further bolstered by the fact that the letter omitted the "terms necessary to confirm a final mortgage modification[,]" such as the principal balance, the length of the modified loan, the interest rate, or the amount of the monthly payments.  Judge Hodgson found that "the absence of these necessary terms [was] fatal to the agreement as it lack[ed] the necessary indicia of a permanent enforceable modification agreement."

Thus, as the April 11, 2017 letter stated, defendant had to qualify for a permanent modification by paying the three TPP payments.  Once that occurred, he was eligible for a permanent modification, and the terms of that modification were set forth in plaintiff's November 21, 2017 letter.  Because defendant

6

refused to accept the proposed terms of the permanent modification, Judge Hodgson concluded that he was not entitled to relief from the judgment of foreclosure under Rule 4:50-1(e) or (f). This appeal followed.[3]

On appeal, defendant raises the same contentions he unsuccessfully pressed before Judge Hodgson. He again argues that his mortgage was automatically modified as soon as he made the three TPP payments, even though none of the specific terms of the modification were set forth in plaintiff's April 11, 2017 letter, and defendant rejected the new loan provisions plaintiff detailed in its November 21, 2017 letter. Having considered these contentions in light of the record and applicable law, we affirm substantially for the reasons set forth in Judge Hodgson's decision. We add the following comments.

A trial court's decision on a Rule 4:50-1 motion is entitled to "substantial deference, and should not be reversed unless it results in a clear abuse of discretion." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion may be found when a decision lacks a "rational explanation," represents an inexplicable "[departure] from established polices," or rests "on

---

[3] Following the denial of defendant's motion to vacate the foreclosure judgment, the sheriff sold the property at a sale. On May 11, 2018, Judge Hodgson denied defendant's motion to set aside the sheriff's sale. Defendant does not challenge that order on appeal.

an impermissible basis." Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

Applying this standard, we discern no basis for disturbing Judge Hodgson's well-reasoned decision. As the judge found, the determinative issue is whether the parties agreed to the terms of an enforceable mortgage modification by virtue of defendant's payment of the three TPP payments. The judge properly answered this question in the negative.

It is well established that "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting West Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)). "As a general principle of contract law, there must be a meeting of the minds for an agreement to exist before enforcement is considered." Kernahan v. Home Warranty Adm'r of Fla., Inc., ___ N.J. ___, ___ (2019) (slip op. at 19) (citing Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538 (1953)).[4]

---

[4] The issue of whether the parties entered into an enforceable agreement is a question of law, which we review de novo. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009).

A-3058-17T4

In addition, the parties must agree "to the essential terms" of the agreement. Cumberland Farms, Inc. v. N.J. Dep't of Envtl. Prot., 447 N.J. Super. 423, 438-39 (App. Div. 2016) (quoting Mosley v. Femina Fashions Inc., 356 N.J. Super. 118, 126 (App. Div. 2002)). "Where the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable." Weichert, 128 N.J. at 435. This is so because "the terms of a contract must be definite and certain so that a court may order with precision what the parties must do." Graziano v. Grant, 326 N.J. Super. 328, 339 (App. Div. 1999) (citing Barry M. Dechtman, Inc. v. Sidpaul Corp., 89 N.J. 547, 552 (1982)).

These well-established principles apply to mortgage agreements. For example, in Heim v. Shore, the parties' mortgage agreement, as here, did not include the principal amount of the mortgage, the terms of payment, the due date, or the interest rate. 56 N.J. Super. 62, 71 (App. Div. 1959). Under those circumstances, we held "that the terms of the agreement were too uncertain" to be enforceable. Id. at 70.

On the other hand, in GMAC Mortgage, LLC v. Willoughby, the parties to a mortgage agreement participated in a court-sanctioned mediation program after the defendant defaulted on her mortgage. 230 N.J. 172, 175 (2017). The

parties executed a memorandum memorializing their agreement that provided, in pertinent part, that the defendant's mortgage would be permanently modified if she made a series of trial payments, paid a down payment, and provided certain, specified documents to the lender. Id. at 186.

Unlike in the present case, however, the memorandum specified "the precise terms of the [a]greement," including the estimated principal balance of the loan, the length of the loan, the interest rate, and the estimated monthly payments. Ibid. Because the terms of the modification were fully set forth and agreed upon by the parties, our Supreme Court held that the agreement could be enforced once the defendant made the trial payments and satisfied the other conditions set forth in the memorandum. Id. at 186-87.

Applying these principles, we are satisfied that plaintiff's April 11, 2017 letter was insufficiently definite to permit it to be enforced as a permanent modification of defendant's mortgage. As Judge Hodgson found, the letter did not set forth any of the essential terms of a mortgage agreement because it did not specify the new principal balance of the loan, the length of the loan, the interest rate, or the estimated new monthly payments, which would necessarily include the payment of escrow items such as property taxes and homeowner's insurance. Although defendant claimed that he believed that the terms of the

A-3058-17T4

permanent modification would be the same as the monthly TPP payments, the letter did not state this either directly or by implication. Instead, plaintiff merely promised that if defendant could make the three TPP payments, defendant would be eligible for a permanent modification of the loan on terms to be specified in a future agreement. Plaintiff complied with this representation when it offered defendant a permanent modification on the specific terms set forth in its November 21, 2017 letter. After defendant rejected this offer, there was simply no basis for vacating the default judgment of foreclosure.[5] Nor are we persuaded that concepts of "merger" undermine the soundness of the trial court's decision.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] In so ruling, we do not mean to suggest that the April 11 letter was a model of clarity or that it should be viewed by parties in the future as an example to be used by lenders to propose similar mortgage modifications. All we are saying in affirming the trial court's decision is that we agree with Judge Hodgson's conclusion that the letter was "sufficiently clear and identifie[d] the offer as a 'trial period' and not a permanent modification" of defendant's mortgage obligations.

A-3058-17T4