**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0394-23

STONE WOOL 22, LLC,

    Plaintiff-Respondent,

v.

BLOCK 87, LOT 10,
57 WASHINGTON AVENUE,
TOWNSHIP OF IRVINGTON,
STATE OF NEW JERSEY,
Assessed to: MATTHEWS
ENTERPRISES LLC,

    Defendant-Respondent,

and

PEAKE POINT, LLC,

    Intervenor-Appellant.

_____

        Argued December 9, 2024 – Decided July 31, 2025

        Before Judges Sabatino, Gummer, and Berdote Byrne.

        On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F-008595-22.

Adam D. Greenberg argued the cause for appellant (Honig & Greenberg, LLC, attorneys; Adam D. Greenberg, of counsel and on the briefs).

Stuart B. Klepesch argued the cause for respondent Block 87, Lot 10, 57 Washington Avenue, Township of Irvington, State of New Jersey, Assessed to: Matthews Enterprises LLC.[1]

PER CURIAM

In this tax-foreclosure case, intervenor Peake Point, LLC appeals an order vacating a final judgment obtained by plaintiff Stone Wool 22, LLC (Stone Wool) and an order denying Peake Point's subsequent reconsideration motion. We vacate the first order, reverse the reconsideration-motion order, and remand for further proceedings, including an evidentiary hearing.

I.

On August 26, 2020, Matthews Enterprises LLC (the LLC) obtained from the Township of Irvington a tax sale certificate encumbering property located in Irvington at 57 Washington Avenue and described on tax maps as Block 87, Lot 10. The Township's Abandoned Property Public Officer had declared the

---

[1] Matthews Enterprises LLC is identified as Matthew Enterprises LLC in some documents in the record. We refer to it as Matthews Enterprises LLC, which is the name it used in its submissions to this court and the trial court used in the orders that are the subject of this appeal.

2

property to be abandoned in an Abandoned Property Certification she executed on July 22, 2020.  Noting the property had been declared abandoned, the LLC filed a foreclosure action regarding the property in the fall of 2020 and obtained a final judgment and title to the property on June 10, 2021.

The LLC did not pay the 2020 taxes on the property.  As a result, the township sold a tax sale certificate to an entity called Fig Cust  FIGNJ19 LLC & SEC PTY (Fig) on December 29, 2020.  On August 17, 2022, Fig filed a foreclosure action regarding the property pursuant to N.J.S.A. 54:5-86(b) and the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 to -104.75.

N.J.S.A. 54:5-86(b) provides an exception to the two-year tax sale foreclosure waiting period required in N.J.S.A. 54:5-86(a).  That exception enables "[a]ny person . . . holding a tax sale certificate on a property that meets the definition of abandoned property" under the Abandoned Properties Rehabilitation Act (APRA), N.J.S.A. 55:19-78 to -107, "either at the time of the tax sale or thereafter," to file an action "demanding that the right of redemption on such property be barred," pursuant to the Tax Sale Law, N.J.S.A. 54:5-1 to -137, or the In Rem Tax Foreclosure Act.  N.J.S.A. 54:5-104.32 expressly provides that an "abandoned property certificate holder may proceed, In Rem,

A-0394-23

. . . to bar rights of redemption, after said certificate has been recorded in the office of the county recording officer."

In its complaint, Fig alleged it had not been able to obtain "a certificate of abandonment from the public officer or tax collector."[2] It stated it consequently was seeking entry of a court order declaring the property abandoned pursuant to N.J.S.A. 54:5-86(b) and, ultimately, a judgment declaring foreclosed the redemption rights of anyone who had failed to timely exercise his or her right to redeem. Fig described the LLC as a "transferee or purchaser of title" and as the entity assessed for the property. The complaint was sent to the LLC and its managing member Rahameen Matthews, as the LLC's registered agent. Notice of the foreclosure complaint, identifying the LLC as the property owner, was published and posted. The LLC did not file an answer to the complaint.

On November 9, 2022, Fig moved for a determination the property was abandoned, serving the LLC and Matthews. In support of the motion, Fig submitted an "Abandoned Property Certification" by Derek Leary, who described himself as "a Licensed Construction Official, Building Subcode Official, Building Inspector HHS, Housing Code Official and Inspector of Hotel

_____

[2] The "public officer" is the person designated by the municipality "to carry out the responsibilities set forth in [APRA]." See N.J.S.A. 55:19-80.

and Multiple Dwellings." He certified he had inspected the exterior of the property on June 10, 2022, submitted photographs purportedly of the property, and opined the property had been abandoned pursuant to N.J.S.A. 55:19-81. On December 29, 2022, the court granted the unopposed motion and declared the property abandoned pursuant to N.J.S.A. 54:5-86(b) and N.J.S.A. 55:19-81.

Fig assigned its tax sale certificate to Stone Wool. On January 6, 2023, Fig moved to substitute Stone Wool as plaintiff and filed a Request for Entry of Default. The court entered an order granting the motion to substitute on January 20, 2023. Finding no answer had been filed and the tax sale certificate at issue had not been redeemed, the court entered final judgment in favor of Stone Wool on January 23, 2023. A copy of the final judgment was mailed to the LLC and Matthews that day.

Stone Wool sold the property to Peake Point for $150,000 on April 21, 2023. Later that day, the LLC moved to vacate the final judgment.[3] It did not reference Rule 4:50-1 in its notice of motion or otherwise indicate under what court rule it was seeking to vacate the judgment. In support of the motion, the LLC submitted Matthews's certification. In that certification, Matthews

---

[3] A lawyer filed a notice of appearance for the LLC on February 14, 2023, but filed nothing else with the court. A different lawyer filed the motion to vacate the judgment.

A-0394-23

confirmed the LLC had become the title owner of the property as a result of its foreclosure action and that the property had been deemed abandoned in 2020.

Matthews certified he had intended to "renovate and rehabilitate" the property and then sell it to "recoup several times the amount paid for the assignment." He provided details and documents about those purported efforts, including a development proposal he had submitted to the Township's Community Development Department; an invoice from a company he said had performed interior demolition work at the property in late 2020 and early 2021 and exterior clean-up work in March of 2021; renderings an architect had completed in March 2022 of a potential renovation of the house located on the property; and a survey prepared in September 2022.

Matthews claimed that for several months after final judgment was entered in the LLC's foreclosure case, he had not "accessed" the property, "waiting to be assured of title and legal right to gain access." He stated that before and after entry of the final judgment in the LLC's foreclosure case, he had been "involved in rehabilitation of development of residential distressed property" in Rahway and Westfield. He asserted a fire had occurred in his former residence in Hackensack in January 2021 and that during the fall of 2022, he was "overseeing the completion of" the Rahway and Westfield projects and

6

"dealing with" the Hackensack fire. He certified he had "devoted most of the financial resource[s]" to the Rahway and Westfield projects and his "time and attention" to those projects and the Hackensack property.

Matthews conceded that during the late summer and fall of 2022, he "was not as responsive as [he] should have been" to Fig's foreclosure action. Referencing a conversation he had had with an attorney, Matthews assumed Fig would take six months to a year to complete its foreclosure, providing that time to redeem Fig's tax sale certificate. He asserted the sale of the Westfield property provided resources for the renovation of the Irvington property and that from mid-November 2022, he was "financially prepared to redeem the . . . tax sale certificate and cease the foreclosure." He certified that on December 2, 2022, he had gone to the Irvington tax collector's office "with the intention to arrange for redemption of [Fig's] tax sale certificate." According to Matthews, a staff member told him he had to confirm the redemption amount with Fig's attorney. Matthews also certified that after the staff member had told him he could submit a cashier's check in the amount of $2,190.33 to pay the "open" fourth quarter taxes on the property, he obtained and submitted a cashier's check in that amount.

A-0394-23

Matthews certified that on December 9, 2022, he had met again with the staff member of the tax collector's office, who advised him he had not received updated expense figures from plaintiff and could not accept a redemption payment without confirmation from plaintiff or its counsel of the amount due. Matthews asserted he also had met that day with the Township's tax assessor to discuss his request to reduce the tax assessment on the property while it was being renovated. According to Matthews, he visited the tax collector's office at the end of December and called the office in January 2023, "willing to pay an estimate that probably exceeded the amount due" but was told again "final figures were not available" and the tax collector "would not accept the offer of redemption." According to Matthews, he called the tax collector's office on February 8, 2023, "prepared, again, to deliver full redemption payment." A different staff member advised him by email he could not redeem because Stone Wool had obtained a final judgment in the foreclosure matter.

In his certification, Matthews challenged the basis of Fig's abandoned-property motion. According to Matthews, one of the photos submitted in support of that motion was not of the property at issue. He also questioned Leary's description of the property in the certification he had submitted in support of Fig's motion. Matthews noted that in April 2022, which was less than

two months before Leary executed the certification, he had "paid for clean-up and debris removal which required several dumpsters." He denied he had abandoned the property. He referenced generally the COVID-19 pandemic, not specifying any delays caused by the pandemic. His certification was devoid of any assertion Fig had failed to serve him or the LLC with notices regarding Fig's foreclosure action or the motions filed in that action.

In support of its motion to vacate final judgment, the LLC also submitted the certification of the Township's tax assessor. She certified that on December 9, 2022, she had met with Matthews "to inspect the property for assessment purpose[s]." According to the tax assessor, that inspection confirmed Matthews's representations about the "demolition of the interior and tear down of walls in preparation of development of the [p]roperty . . . ." She described the "active demolition work" as "indicative of activity prefatory toward future renovation." Consequently, she reduced the assessment on the property from $139,000 to $93,5000 temporarily "subject to the completion of the rehabilitation of the [p]roperty." The LLC also submitted the certification of its counsel, who asserted events indicated Matthews and his counsel "mistakenly assumed redemption was available after the final judgment."

9

In opposition to the motion, Peake Point submitted the certification of its owner and manager, Joseph Phillip. He confirmed Peake Point had purchased the property hours before the LLC filed the motion to vacate the final judgment. He described the property as being in "foul shape" and "abandoned and clearly being used as shelter by homeless people." He questioned Matthews's denial he had been absent and had abandoned the property, contending "[t]he taxes were unpaid, the property is in horrendous condition, and [Matthews] received foreclosure notices and did nothing in response." He attached photographs to his certification, asserting it was "obvious that [Matthews had not] been [to the property] in months given the amount of trash and waste that plagues the structure." According to Phillip, Peake Point believed it was "clear to close" when the LLC took no action in the months that followed its counsel's February 14, 2023 notice of appearance and would lose "a great deal of money if the judgment is vacated."

Stone Wool submitted the certification of its counsel in opposition to the motion. She detailed the efforts made to provide notice to the LLC and Matthews about Fig's foreclosure case and the motions filed in that case. She asserted an October 13, 2022 affidavit of fees and costs had been provided to the Township's tax collector and that Matthews had called her office on October

10

19, 2022, and stated he "intended to redeem the Tax Lien prior to November 29, 2022." She submitted a February 10, 2023 email from the LLC's attorney, in which he had asked if Stone Wool would accept a post-judgment redemption of the tax lien or an assignment of the final judgment. She responded, advising counsel Stone Wool would not vacate final judgment or allow redemption of the tax lien. She certified a different lawyer had contacted her office on April 4, 2023, making the same inquiry. She advised that attorney Stone Wool "remained uninterested in vacating the [f]inal [j]udgment." She asked the court to order the reimbursement of Stone Wool's counsel fees and costs if the court vacated the final judgment.

Stone Wool also submitted in opposition to the vacation motion the certification of its "agent," Brad Matos. According to Matos, the Township's tax collector's office requested and received on August 17, 2022, redemption amounts on Fig's tax lien, which included the statutory foreclosure fee amount. Matos certified that on December 2, 2022, the tax collector's office submitted another request to verify redemption figures on the lien and received a response that day confirming the redemption amount and the statutory foreclosure fee amount. According to Matos, Stone Wool was owed $20,365.50 on the tax lien as of April 24, 2023, if the court vacated the final judgment.

A-0394-23

In reply, the LLC submitted another certification by Matthews. He said in that certification that the first indication he had received of any lien or foreclosure against the property was correspondence he had received from plaintiff's counsel on or about October 19, 2022, which "consisted of a publication advertising the house for some form of sale or lien." In addition, he challenged many of the factual statements made by the other parties in opposition to the LLC's motion, denied receiving the August 17, 2022 and December 2, 2022 redemption figures, and made more assertions regarding his interaction with the tax collector's office and his purported efforts to redeem the tax lien.

The LLC also submitted additional certifications from its counsel. In one of those certifications, counsel asserted he had made a request to the Township pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, for records regarding any request filed by plaintiff to the tax collector's office and "the [p]ublic [o]fficer," regarding the property for a certificate of abandonment pursuant to N.J.S.A. 54:5-86(b) and N.J.S.A. 55:19-83(d). According to counsel, the response to that OPRA request demonstrated plaintiff had not requested either the tax collector's office or the "public officer . . . [to] certify to the abandonment of [the property] pursuant to statute." In an apparent sur-reply,

12

Stone Wool's counsel certified her office had sent to the tax collector's office a letter dated July 1, 2022, requesting "a public officer execute an abandoned property certification for the subject property" but had not received a response.

During oral argument, the LLC's counsel argued: Fig's foreclosure case should not have proceeded under the accelerated foreclosure process permitted for abandoned properties under N.J.S.A. 54:5-86(b); the LLC's motion to vacate the final judgment was timely; Matthews had attempted to redeem the certificate prior to the entry of final judgment and had the funds to do so; significant sums had been invested in rehabilitating the property; the documents submitted in support and in opposition to the motion demonstrated "the failing of the tax collector's office" in that it had received from Fig redemption amounts but failed to provide that information to Matthews in response to his redemption requests; Peake Point should have waited until after the statutory period for filing a motion to vacate before purchasing the property from Stone Wool; and the equitable concerns expressed by the Supreme Court in Tyler v. Hennepin County, 598 U.S. 631 (2023), applied and the LLC should be allowed to keep the property. Counsel advised the court the LLC did not "dispute the condition of the property." He also conceded "mail service was received," though he asserted, "coming off of the COVID[-19 pandemic] . . . mail was not readily delivered."

13

Peake Point's counsel argued the property had been abandoned and the abandonment determination was procedurally sound; it was a bona fide purchaser with no knowledge of any redemption attempts; the LLC had failed to show excusable neglect but instead demonstrated it had caused the situation by not paying taxes on the property and not redeeming the lien; the LLC had no valid arguments warranting vacation of the final judgment under Rule 4:50-1; and the Court's concerns in Tyler did not apply.

Stone Wool's counsel emphasized Fig had "immediately verified [redemption] figures" in response to the requests from the tax collector's office. She suggested Matthews "was doing what a lot of the defendants do. They kind of wait around and see how long they can go without redeeming. How close to the end of the case can they get . . . playing chicken." She also pointed out the complaint clearly had put the parties on notice that plaintiff was seeking a declaration the property had been abandoned and was litigating the foreclosure action on that basis.

On August 14, 2023, the court entered an order vacating the final judgment, directing the LLC to redeem the tax sale certificate within ten days of receipt from the tax collector of the redemption amount; and permitting Stone Wool to seek reinstatement of the final judgment if the LLC failed to meet that

14

deadline. In the accompanying seven-page opinion, the court restated the parties' arguments and provided a two-paragraph analysis of its decision to vacate the final judgment:

> While defendant's conduct in this matter was less than exemplary, the record reflects that he was arguably ready and able to redeem in December 2022 within the statutory time period. He was familiar with the foreclosure process for abandoned property as he availed himself to it in purchasing his own tax sale certificate upon which he foreclosed on June 10, 2021. Moreover, he failed to pay any taxes during the time he owned the property.

> As concerning as was Matthews's inaction, [Stone Wool] and [Peake Point] were aware of Matthews's efforts at redemption and did little to acknowledge them. To the contrary, arguably within the three month statutory period for Matthews to redeem, and on the date of the filing of Matthews's motion to set aside [f]inal [j]udgment, Peake Point purchased the property by way of quit claim deed for nearly $130,000 over the amount of the redemption amount including penalties and interest. Furthermore, defendant has established that it invested nearly $30,000 in commencing the rehabilitation process for the property.

The court did not reference Rule 4:50-1 in that analysis. Characterizing the LLC's request for relief as "merely seeking the right to be granted ten days during which to redeem its tax sale certificate," the court granted the motion.

A-0394-23

Peake Point moved for reconsideration of the order. Stone Wool cross-moved, asking the court to order the LLC to pay its counsel fees and costs. The LLC submitted Matthews's certification in opposition to the motion. Matthews certified he had submitted payment to the tax collector to redeem the tax sale certificate in compliance with the August 14, 2023 order. The court entered an order denying the motion and cross-motion on October 6, 2023. In an attached statement of reasons, the court explained:

> The reasons for which the court granted the motion to vacate the final judgment were anchored in the timing of the motion to vacate (less than three months from the recording of the final judgment) as well as the fact that intervenor purchased the property by way of quitclaim deed on the same date defendant filed its motion to vacate. Moreover, the purchase was for nearly $130,000.00 in excess of the redemption amount and after defendant invested almost $30,000.00 in rehabilitation costs. Thus, the alleged "bona fides" of [Peake Point's] purchase did not tip the scales in favor of Peake Point.
>
> . . . .
>
> Here, the court did not base its decision solely on a possible lack of innocence of intervenor Peake Point but more heavily on the timing of the redemption (less than three months from the recording of the final judgment as per N.J.S.A. 54:5-104.67) as among other reasons pursuant to R. 4:50-1(f).

16

On appeal, Peake Point argues the court erred in granting the motion to vacate because defendant had failed to establish excusable neglect, a meritorious defense, or exceptional cause under Rule 4:50-1. Peake Point also argues the court should have protected it as a bona fide purchaser and, under equitable principles, should have made the LLC bear any loss "because only it had the power to prevent foreclosure."

## II.

"A motion to vacate default judgment implicates two oft-competing goals: resolving disputes on the merits, and providing finality and stability to judgments." BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 123 (App. Div. 2021). "Whether to grant relief 'is left to the sound discretion of the trial court,' . . . and that decision is reviewed for abuse of discretion." 257-261 20th Ave., Realty, LLC v. Roberto, 259 N.J. 417, 436 (2025) (quoting Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993)). "A court abuses its discretion 'when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Parke Bank v. Voorhees Diner Corp., 480 N.J. Super. 254, 262 (App. Div. 2024) (quoting Mims v. City of Gloucester, 479 N.J. Super. 1, 5 (App. Div. 2024)). We also apply an abuse-of-

discretion standard when reviewing an order determining a reconsideration motion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021)

"Rule 4:50-1 provides for relief from a judgment [or order] in six enumerated circumstances." D.M.C. v. K.H.G., 471 N.J. Super. 10, 26 (App. Div. 2022) (quoting In re Est. of Schifftner, 385 N.J. Super. 37, 41 (App. Div. 2006)). The LLC in its motion to vacate did not identify under which subpart of Rule 4:50-1 it was seeking relief; the trial court in its statement of reasons attached to the order granting the motion did not state the subpart under which it was granting the motion. In the statement of reasons attached to the order denying Peake Point's reconsideration motion, the court indicated it had based its decision on subpart (f).

Subpart (f), the "catch-all" provision of Rule 4:50-1, DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 269-70 (2009), authorizes a court to "relieve a party . . . from a final judgment or order for . . . any . . . reason justifying relief from the operation of the judgment or order." R. 4:50-1(f). As broad as that may seem, "[r]elief . . . is available only in 'exceptional circumstance.'" Roberto, 259 N.J. at 436 (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 290 (1994)). Although "the Rule's 'boundaries are as expansive as the need to achieve equity and justice,' . . . 'vacation of a judgment . . . should be granted

A-0394-23

sparingly.'" Ibid. (second omission in original) (first quoting Little, 135 N.J. at 290; then quoting In re Guardianship of J.N.H., 172 N.J. 440, 473-74 (2002)) (second omission in original). "The rule is limited to 'situations in which, were it not applied, a grave injustice would occur.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 484 (2012) (quoting Little, 135 N.J. at 289). In deciding whether to vacate a judgment under Rule 4:50-1(f), "courts consider, among other equitable factors, the extent of the delay in applying for relief, the applicant's fault or blamelessness, and any prejudice to the other party." Roberto, 259 N.J. at 436. "[A]ll 'doubts . . . should be resolved in favor of the parties seeking relief.'" Ibid. (omission in original) (quoting Mancini, 132 N.J. at 334) (omission in original).

Contrary to the trial court's characterization, the LLC wasn't "merely seeking the right to be granted ten days during which to redeem its tax sale certificate"; it was asking the court to vacate a judgment. And that is serious business. See Little, 135 N.J. at 286 (finding "[b]ecause of the importance that we attach to the finality of judgments, relief under Rule 4:50-1(f) is available only when 'truly exceptional circumstances are present'") (quoting Bauman v. Marinaro, 95 N.J. 380, 395 (1984)). The problem with the trial court's two paragraph analysis is that it did not identify "truly exceptional circumstances"

19

that supported the application of <u>Rule</u> 4:50-1(f).  It was based on at least one unsupported factual finding; we see nothing in the record to support the conclusion Peake Point was aware of Matthews's purported redemption attempts.  And in making its limited analysis, the court appeared to accept as credible factual assertions Matthews had made in his certifications even though Stone Wool and Peake Point had made and supported factual assertions that called his credibility into question.  <u>See</u>  <u>McGory v. SLS Landscaping</u>, 463 N.J. Super. 437, 454 (App. Div. 2020) ("We have determined 'a holding which authorizes a [judge] to decide contested issues of material fact on the basis of conflicting affidavits, without considering the demeanor of witnesses, is contrary to fundamental principles of our legal system.'" (alteration in original) (quoting <u>Conforti v. Guliadis</u>, 128 N.J. 318, 322 (1992))); <u>Harrington v. Harrington</u>, 281 N.J. Super. 39, 47 (App. Div. 1995) ("we have repeatedly emphasized that trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications").

Those readily-apparent factual disputes show the case has issues left unaddressed by the trial court that potentially could support a finding under subpart (f) or even another subpart of the rule.  Matthews asserts he was ready, willing, and able to timely redeem Fig's tax certificate but was thwarted when

the tax collector's office staff members repeatedly told him he could not redeem because the office did not have final redemption figures from plaintiff. If that assertion is true, it potentially could support vacation of the judgment. But Stone Wool contends the tax collector's office was given the final redemption figures multiple times. Did the tax collector's office fail to provide that information to Matthews? Or did Matthews have the information and was, as the other parties contend, "playing chicken" to see how long he could hold off in paying the redemption amount? That issue, especially with no input from the tax collector's office, cannot be resolved based on the parties' dueling certifications.

The LLC raised issues, albeit belatedly, regarding the declaration the property had been abandoned. That declaration is critical to Stone Wool's case – and the decision about whether to vacate the judgment – because it enabled Stone Wool to proceed and obtain a final judgment under N.J.S.A. 54:5-86(b)'s exception to the two-year tax sale foreclosure waiting period otherwise required in N.J.S.A. 54:5-86(a).

Based on the Township's OPRA response, the LLC argued Fig never attempted to obtain a certificate of abandonment from the appropriate public official and challenged the certification that was submitted. Matthews

contended Leary had submitted one photograph that was of a different property and questioned, if Leary had inspected the exterior of the property in June, how he could not have seen the improvement to the property from the April clean-up effort that required "several" dumpsters. The tax assessor certified her December 9, 2022 inspection of the property revealed "active demolition work" that was "indicative of activity prefatory toward future renovation." Matthews certified his purported efforts to renovate the property. In contrast, Stone Wool documented efforts to obtain a certificate from the designated public office and Peake Pointe's representative detailed the purported dilapidated condition of the property.

These genuine issues of material fact should have been considered by the court after conducting a plenary hearing that would have enabled it to consider the credibility of the witnesses presented. In deciding the motion without conducting that hearing or considering those issues, the court misapplied its discretion. Accordingly, we vacate the August 14, 2023 order granting the LLC's motion, reverse the October 6, 2023 order denying Peake Pointe's reconsideration motion, and remand for proceedings consistent with this opinion. We take no position on the trial court's eventual resolution of these issues.

22

Before we conclude, we address briefly <u>Tyler</u>, <u>Roberto</u>, and their potential application to this case. In <u>Roberto</u>, the Court expressly declined to consider whether its ruling applied to in rem foreclosures of abandoned property. 259 N.J. at 449 n.4. In <u>Tyler</u>, 598 U.S. at 646-47, the Court recognized a distinction may exist in the application of the Takings Clause of the Fifth Amendment to property retained by an owner and property abandoned by an owner, citing <u>Texaco, Inc. v. Short</u>, 454 U.S. 516, 526 (1982).

In <u>Texaco</u>, the Court held "the State has the power to condition the permanent retention of [a] property right on the performance of reasonable conditions that indicate a present intention to retain the interest." <u>Id.</u> at 526. The Court acknowledged "[f]rom an early time, this Court has recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time," <u>ibid.</u>, and that "this Court has never required the State to compensate the owner for the consequences of his own neglect," <u>id.</u> at 530. The Court held the abandonment statutory scheme at issue in that case did not result in a taking that required compensation because "after abandonment, the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right." <u>Ibid.</u>

A-0394-23

In <u>Tyler</u>, the Court rejected the defendant's attempt to apply <u>Texaco</u> to the statutory scheme at issue in <u>Tyler</u> because "Minnesota's forfeiture scheme is not about abandonment at all." <u>Tyler</u>, 598 U.S. at 647. Because we are remanding the case for a plenary hearing enabling the trial court to resolve disputed issues, including whether the property was correctly deemed abandoned, we also direct the trial court on remand, if necessary, to make findings about <u>Tyler</u>'s application to this case, considering the statutes and property at issue.

Vacated in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

24                                                                          A-0394-23